Filed 5/6/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ETHAN J., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>                v.<br><br>MONICA G.,<br><br>    Defendant and Appellant. | F070114<br>(Super. Ct. No. 10CEJ300218-3)<br><br>**OPINION** |

APPEAL from orders of the Superior Court of Fresno County. Martin C. Suits, Judge. (Retired Judge of the Fresno Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, Amy K. Cobb, Deputy County Counsel, for Plaintiff and Respondent.

When the juvenile court orders a legal guardianship for a child with visitation for the mother, and the child refuses to participate in visitation, may the court terminate dependency jurisdiction with knowledge that its visitation order will not be honored or enforceable? We conclude it may not do so absent a finding continued visitation would be detrimental to the child. We reverse the order terminating dependency jurisdiction.

## PROCEDURAL AND FACTUAL SUMMARY

Appellant Monica G. is the mother of nine-year-old Ethan who is currently in the custody of his maternal grandmother and legal guardian, Vera. Monica and Vera have a strained and contentious relationship.

These dependency proceedings were initiated in September 2010 after Vera contacted the police to report that Monica was trying to remove then four-year-old Ethan and his sisters, 17-year-old R.S. and 14-year-old G.G.,[1] from her home. Monica, who was homeless and using methamphetamine, had left the children in Vera's custody because she could not care for them. Vera contacted the police after she and Monica argued about Monica's drug use and Monica tried to leave with the children.

The responding police officer placed a protective hold on the children and contacted the Fresno County Department of Social Services (department). There was at that time an open investigation into allegations that a female friend of Monica's, Ms. C., sexually molested R.S. and Ethan. Monica admitted she was still in contact with Ms. C.

R.S. and Ethan confirmed the sexual molestation allegation. R.S. told the emergency response social worker that two men and two women tied her arms and legs to a bed and molested her while she was staying in a motel with Monica. She said they also tied Ethan up and Ms. C. touched his private parts. She did not know if Monica was

---

**1** During the course of these proceedings, R.S. achieved majority and G.G. was returned to Monica's custody. They are not subjects of this appeal.

2.

present at the time. Ethan said Ms. C. and another person touched his "peepee" in a motel room.

The department filed a dependency petition seeking the children's removal and placed them with Vera. The juvenile court exercised its dependency jurisdiction over the children and in March 2011 ordered Monica to participate in reunification services.

Monica participated in her court-ordered services but ultimately made minimal progress in completing them. Most notably, she needed but refused inpatient drug treatment. Nevertheless, Monica regularly visited Ethan and was loving and affectionate with him.

In February 2011, Ethan began weekly therapy sessions with Dr. William Latta who reported Ethan initially presented with frequent anger outbursts, anxiety, poor focus and impulsivity. However, Ethan's confidence and happiness increased, which Dr. Latta attributed to the loving and structured environment Vera provided him. Dr. Latta did not recommend returning Ethan to Monica's custody in part because of her noncompliance, but also because Ethan struggled with insecure attachment and was doing well in Vera's care.

In January 2012, at the 12-month review hearing, the juvenile court terminated Monica's reunification services. In March 2012, Dr. Latta discharged Ethan from mental health services after determining Ethan met his mental health goals.

In June 2012, at the Welfare and Institutions Code section 366.26[2] permanency hearing, the juvenile court selected guardianship as the permanent plan for Ethan and G.G. and appointed Vera as the children's guardian. The court ordered one unforced and unsupervised visit a month for Monica, Ethan and G.G. at Monica's residence. The court terminated its dependency jurisdiction and retained jurisdiction over the children as wards of the guardianship.

---

[2] All further statutory references are to the Welfare and Institutions Code.

3.

In February 2013, Monica filed a petition under section 388 (388 petition) requesting extended visits with the children. She declared in the petition that she maintained sobriety, completed an anger management class and was working on her general education requirements.

The department recommended the juvenile court deny Monica's 388 petition. It reported that the visitation schedule was not being followed because Ethan and G.G. did not want to visit Monica. Ethan and G.G. reported that Monica easily angered and often engaged in verbal arguments with Vera. Vera reported that Monica became angry especially when Ethan chose not to visit her. She berated him and tried to force visitation. Ethan and G.G. also reported that they were happy with Vera and did not want increased visitation. After a contested hearing, the juvenile court denied the 388 petition.

In November 2013, Monica filed another 388 petition requesting overnight visits with Ethan and custody of G.G. Monica had maintained her sobriety, completed a parenting program and outpatient drug treatment, and received high school equivalency and work readiness certificates. Monica declared in the petition that G.G. was unhappy with Vera and fearful of her and wanted to return to her custody.

A social worker interviewed G.G. and Ethan regarding Monica's requests. G.G. said she was emotionally overwhelmed and mentally stressed in Vera's care. She said Vera was very restrictive of her activities and verbally aggressive with her. She said she and Ethan wanted more contact with Monica but Vera would not allow it and would not discuss it with Monica. Ethan, however, told the social worker he did not want increased visits with Monica and did not want to visit her even once a month. The department recommended the juvenile court return G.G. to Monica's custody and grant Monica liberal visits with Ethan.

In February 2014, following a contested hearing on the 388 petition, the juvenile court reinstated its dependency jurisdiction over Ethan and G.G., terminated the

guardianship as to G.G., and returned G.G. to Monica's custody with family maintenance services. The court ordered Ethan and Monica liberal visitation, the time and place to be agreed upon by Monica and Vera. The parties informally agreed that Ethan would not be forced to visit Monica. Monica's attorney said Monica did not want Ethan "dragged into a vehicle and … forced to visit." The court set a hearing in April 2014 to review the status of Ethan's visitation.

In its report for the April 2014 hearing, the department informed the juvenile court that Ethan refused to visit Monica and G.G. Monica blamed Vera whom she accused of emotionally abusing and manipulating Ethan. The department investigated Monica's accusations and found them baseless.

In April 2014, the juvenile court dismissed its dependency jurisdiction over G.G. and indicated it would also dismiss dependency jurisdiction over Ethan as required by section 366.3, subdivision (a). At the request of Monica's attorney, the juvenile court set a contested postpermanency review hearing (contested hearing).

On June 18, 2014, the juvenile court convened the contested hearing. Monica's attorney requested therapeutic visitation so that Monica could reestablish her relationship with Ethan. The court ordered therapeutic supervised visitation between Ethan, Monica and G.G. and continued the hearing to August 20, 2014. However, the court also ordered the department to have Ethan evaluated by a therapist before it arranged visitation and to transport him to the initial meeting with the therapist. A week later, the department made the referral and Ethan was scheduled to meet with a therapist on August 8, 2014. However, he refused to get into the county vehicle to see the therapist.

On August 20, 2014, the juvenile court reconvened the contested hearing. Ethan testified he did not want to see Monica or G.G. at all. He said he was mad at Monica because Monica told Vera she wished she were dead. He did not miss Monica and was

not willing to see her even if she apologized to Vera. Asked whether seeing a therapist might help him understand his feelings about Monica, he said, "Nope."

Vera testified she tried to talk to Monica about Ethan and his wishes but Monica lashed out at her. However, if Ethan wanted to visit Monica she would not object. She wanted Ethan to have a relationship with Monica but said he had fears related to seeing R.S. tied down and molested. He discussed R.S.'s molestation in therapy.

Monica testified she did not have visits with Ethan for months after the guardianship was established, but Vera made more effort to facilitate visitation after Monica involved the court in 2013. Monica subsequently had unsupervised visitation with Ethan at her home but he stopped visiting when G.G. returned to her custody. Ethan did not tell Monica he did not want to see her or return to her home.

At the conclusion of the contested hearing, the juvenile court terminated its dependency jurisdiction, explaining, "[I]f I continue dependency … it's just going to exacerbate the anger. It's [a] difficult if not impossible situation but there's [nothing] I can do about it."

This appeal ensued.

## DISCUSSION

Monica contends that the juvenile court abused its discretion when it terminated its dependency jurisdiction. Section 366.3, subdivision (a), the governing statute, provides that if "a relative of the child is appointed the legal guardian of the child and the child has been placed with the relative for at least six months, the court shall, except … upon a finding of exceptional circumstances, terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship, as authorized by Section 366.4." If the juvenile court terminates its dependency jurisdiction, it no longer conducts ongoing review hearings. (§ 366.3, subd. (d); *In re K.D.* (2004) 124 Cal.App.4th 1013, 1019.)

6.

We review the juvenile court's decision to terminate its dependency jurisdiction for abuse of discretion. (*In re K.D.*, *supra*, at pp. 1018-1019.)

In this case, Ethan had been in Vera's custody well beyond the six months required by section 366.3, subdivision (a) (the statute). Consequently, the juvenile court was required to terminate dependency jurisdiction unless there were "exceptional circumstances." The statute does not define "exceptional circumstances." However, because a primary difference between dependency and guardianship jurisdiction is the extent of oversight, it stands to reason that exceptional circumstances exist where the circumstances of the parties create a heightened need for judicial oversight. (See *In re K.D.*, *supra*, 124 Cal.App.4th at p. 1019.)

Monica contends Vera's unwillingness to promote visitation and Ethan's refusal to visit her constituted exceptional circumstances and required the juvenile court's continued oversight to ensure that visitation occurred. We concur but not because Vera might not comply with the visitation order. Vera told the juvenile court that she would comply and she had in the past, albeit after the court's involvement. Rather, we conclude Ethan's refusal to visit constituted an exceptional circumstance because it effectively precluded any prospect of visitation and, as we will explain, left Monica without any viable legal remedy.

Meaningful visitation is the lifeblood of the parent-child relationship, even after reunification services are terminated. (*In re Hunter S*. (2006) 142 Cal.App.4th 1497, 1504.) So important is visitation that the Legislature recognized that a parent's regular contact and visitation with his or her child may trump the legislative preference for adoption and thus it created an exception to adoption with visitation in mind. (§ 366.26, subd. (c)(1)(B)(i).)[3] Indeed, it is a foregone conclusion that a parent deprived of

---

[3]     Section 366.26, subdivision (c)(1)(B)(i) provides that the juvenile court shall not terminate parental rights if: "(B) The court finds a compelling reason for determining

7.

visitation and relying on that exception to preserve his or her parental rights is destined to lose them.

When, as here, the juvenile court orders a legal guardianship at the permanency planning hearing, it must "make an order for visitation with the parents … unless the court finds by a preponderance of the evidence that the visitation will be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4)(C).)

If the juvenile court orders visitation, "it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur." (*In re S.H.* (2003) 111 Cal.App.4th 310, 313.) When the court abdicates its discretion and permits a third party, including the dependent child, to determine whether any visitation will occur, the court impermissibly delegates its authority over visitation and abuses its discretion. (*Id*. at pp. 317-318.)

Here, the juvenile court ordered therapeutic supervised visitation with the understanding that it would not be forced. A problem arose, however, when Ethan refused to visit Monica and refused to undergo a therapeutic evaluation to determine whether visitation would be detrimental to him. When the juvenile court then dismissed its dependency jurisdiction, it did so without having made a detriment finding and with foreknowledge that its visitation order was not going to be honored. Indeed, Ethan had successfully refused visitation for approximately six months. Thus, by its order, the juvenile court virtually guaranteed that visitation would not occur.

Moreover, in the likely event that Ethan would continue to refuse visitation, Monica had no effective recourse. Though she retained the right to petition the juvenile

---

that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

8.

court under section 388 to modify its visitation order,[4] she would be hard-pressed to show a change in circumstances as long as Ethan refused to visit her. Further, having not visited Ethan, she would have great difficulty persuading the court that a modified visitation order was in Ethan's best interest.

We conclude that absent a finding of detriment Ethan's refusal to visit Monica constituted an exceptional circumstance under section 366.3, subdivision (a) and warranted ongoing dependency jurisdiction. We further conclude the juvenile court by terminating its dependency jurisdiction impermissibly delegated its authority over visitation to Ethan and abused its discretion. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 51 ["[T]he ultimate supervision and control over this discretion must remain with the court …."].)

Having so concluded, we are nevertheless mindful that a child's refusal to visit or even undergo an evaluation is a challenge. We sympathize with the juvenile court judge's frustration in attempting to maintain an appropriate balance under very difficult circumstances. However, it appears the juvenile court may have had an option it did not pursue. Ethan had a successful patient-therapist relationship with Dr. Latta and may have consented to being evaluated by him. If Dr. Latta determined that visitation would be detrimental to Ethan, the juvenile court would be justified in denying Monica visitation and terminating its dependency jurisdiction. If, on the other hand, Dr. Latta determined that visitation would not be detrimental, the juvenile court could reinstate mental health services for Ethan with an emphasis on working toward visitation. Under those circumstances, the juvenile court could revisit terminating its dependency jurisdiction once it had an enforceable visitation order in place.

---

[4] A parent may petition the juvenile court to modify a prior dependency order pursuant to section 388 on grounds of changed circumstances or new evidence. (§ 388, subd. (a)(1).) The parent must also show the proposed change is in the best interest of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

9.

## DISPOSITION

The juvenile court's order of August 20, 2014, terminating its dependency jurisdiction is reversed. The matter is remanded to the juvenile court to conduct a new hearing and reinstate its dependency jurisdiction.

_____
PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P J.


_____
CORNELL, J.