Filed 12/31/15  In re Gabriela O. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re GABRIELA O., a Person Coming Under the Juvenile Court Law. | B260718 (Los Angeles County Super. Ct. No. CK97552) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ANGELICA O., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Julie Fox Blackshaw, Judge.  Affirmed in part, reversed in part, and remanded.

Nancy Rabin Brucker, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

Angelica (mother) appeals from juvenile court orders: (1) terminating its jurisdiction over her daughter, Gabriela; (2) appointing Gabriella's cousin, Erika, as Gabriela's legal guardian; and (3) ordering monitored mother-daughter visits only with Gabriela's consent. Mother contends that the court abused its discretion by terminating its jurisdiction and by delegating its authority to Gabriela to consent to mother-daughter visits. We agree as to the juvenile court's visitation order, reverse that order, and remand with directions.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Los Angeles County Department of Children and Family Services (DCFS) first intervened in this case on January 27, 2013, when Gabriela was 13 years old. In an incident that day, while mother and daughter were arguing, mother hit Gabriela in the face with an open hand and grabbed Gabriela by the hair, dragging Gabriela to her bedroom. Gabriela left the house and went to the home of her maternal cousin, Erika, with whom mother has a contentious and strained relationship. Erika contacted law enforcement, who, in turn, contacted the DCFS. In separate interviews with a law enforcement officer and a DCFS social worker, Gabriela reported that mother had been emotionally and physically abusing Gabriela since Gabriela was three years old. Gabriela's maternal aunt, Erika, and grandmother also reported mother's consistent verbal and physical abuse of Gabriela. Mother, for her part, denied any such abuse.

At the detention hearing on January 31, 2013, the juvenile court ordered Gabriela detained and ordered family reunification services, including individual counseling for mother and daughter. The court further ordered monitored visits in a therapeutic setting only. DCFS released Gabriela to her cousin, Erika.

Starting in March 2013, mother began individual counseling. Gabriela started individual counseling in April 2013. At that time, Gabriela refused any contact with mother and reported to a DCFS investigator that she was afraid to see mother and did not want to return to live with her. Gabriela's therapist, Nancy Lozano, said Gabriela suffered from symptoms of post-traumatic stress disorder, as Gabriela became nervous and fearful when she spoke about her mother.

2

At the adjudication hearing on May 17, 2013, mother pled no contest to an amended count of the Welfare and Institutions Code section 300, subdivision (b)(1)[1], which stated, in part, that mother's inappropriate discipline of her child (hair pulling) resulted in excessive pain and put Gabriela at risk of "physical harm, damages, danger and physical abuse." The court ordered Gabriela removed from her mother's custody, granted reunification services, and mother-daughter visits in a therapeutic setting.

Gabriela continued to attend counseling, and she continued to be wary of visits with mother. Gabriela's therapist worked with Gabriela to get her to a point where she was ready to visit with mother. Mother, however, had a difficult time scheduling visits because of her work schedule. Finally, Gabriela and mother met on October 17, 2013 Gabriela's therapist monitored the visit and reported no concerns.

At the six-month review hearing on November 15, 2013, the court found that mother was in partial compliance with the case plan and continued reunification services. Later that month, mother told the social worker that she would be taking a trip to Guatemala for a month and would return at the end of December. Mother contacted the social worker upon her return, but the social worker informed mother that Gabriela was not interested in having future visits with her. In response, the social worker authorized monitored telephone calls between them. After three monitored telephone calls, Gabriela asked mother to stop calling and refused any further contact with her.

On March 13, 2014, mother told the social worker that she was no longer interested in receiving services from DCFS, and that she did not want to reunify with Gabriela. The social worker encouraged mother to reconsider her decision, but mother repeated her refusal to reunify and stated that she would not work with DCFS in any capacity.

At the 12-month-review hearing on April 1, 2014, the court terminated mother's reunification services, and Erika expressed her interest in legal guardianship. Gabriela reported that she was doing well academically, socially, and developmentally,

---

[1]    Statutory references are to the Welfare and Institutions Code.

and wished to remain with Erika. DCFS recommended that the court grant Erika legal guardianship and terminate jurisdiction pursuant to the Kinship Guardianship Assistance Payment program (Kin-GAP), which would increase Erika's monthly stipend for Gabriela from $343 per month to $763 per month.

On July 8, 2014, mother changed her mind, and filed a section 388 petition,[2] asking the court to reinstate reunification services or return Gabriela to her. The court set joint hearings for mother's section 388 petition and the section 366.26 permanency hearing for October 20, 2014. The court denied mother's section 388 petition for failure to show new evidence or changed circumstances or that a change would be in Gabriela's best interest. Regarding section 366.26(b)(3), mother argued she did not agree that Gabriela should be placed with Erika, and requested that the case remain open "at least for a few more months to determine if there can be any change or any assistance in having some type of relationship between Gabriela and . . . mother."

The court noted that the hearing had been on calendar for several months and "it [was] time for permanency for Gabriela." The court denied mother's request to continue, and granted legal guardianship to Erika and terminated its jurisdiction. The guardianship order provided for mother to have monitored visits, with Gabriela's consent, not less than one time per month.

Mother filed a timely notice of appeal on November 7, 2014.

## DISCUSSION

Mother contends that the court erred when it delegated its authority to Gabriela to consent to the court ordered visitations. We agree. When, as here, the juvenile court orders a legal guardianship as the permanent plan, it must "make an order for visitation with the parents . . . unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child."

---

[2] A parent may petition the juvenile court to modify a prior dependency order pursuant to section 388 on the grounds of changed circumstances or new evidence. (§ 388, subd. (a)(1).) The parent must also show the proposed change is in the best interest of the child. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317.)

4

(§ 366.26, subd. (c)(4)(C).) If the juvenile court orders visitation, "it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur." (*In re S.H.* (2003) 111 Cal.App.4th 310, 313.) When the court abdicates its discretion and permits a third party, including the child herself, to determine whether any visitation will occur, the court impermissibly delegates its authority over visitation and abuses its discretion. (*In re Ethan J.* (2015) 236 Cal.App.4th 654, 661.) Here, the court ordered visitations no less than once a month but conditioned them on Gabriela's consent. This the court cannot do.

Mother also challenges the termination of dependency jurisdiction on the sole basis that she will have no recourse if her visits with Gabriela fail to occur. Her contention lacks merit. As stated in sections 366.3 and 366.4, the termination of dependency jurisdiction leaves a child within the juvenile court's jurisdiction as a ward of the guardianship.[3] Mother, accordingly, may petition the juvenile court for modification of the visitation order or any other order concerning the guardianship, which is still under the court's jurisdiction.

---

[3] Subdivision (a) of section 366.3 provides that when a relative of a child is appointed as legal guardian, the court shall terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship as authorized by section 3.66.4. Subdivision (a) of section 366.4 provides that any minor "for whom a guardianship has been established resulting from the . . . implementation of a permanency plan pursuant to [s]ection 366.26 . . . is within the jurisdiction of the juvenile court."

## DISPOSITION

The portion of the October 20, 2014 order granting mother visitation "with Minor's consent," is reversed, and remanded to the juvenile court with directions to delete the requirement that Gabriela consent and set a precise schedule for visitation. In all other respects, the order is affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

LUI, J.

6