Filed 6/21/16  In re K.J. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re K.J. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B265624<br>(Super. Ct. Nos. 1435906, 1435907, 1435908, 1435909, 1435910)<br>(Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>T.S. et al.,<br><br>    Defendants and Appellants. | |

T.S. (father) and B.R. (mother) appeal the juvenile court's orders terminating parental rights to their minor child Kap. S. (Kap.), with a permanent plan of adoption, and selecting legal guardianship as the permanent plan for four other minor children.  (Welf. & Inst. Code,[1] § 366.26.)  Appellants contend the court erred in declining to find that the sibling relationship exception to adoption applied.  (§ 366.26,

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

subd. (c)(1)(B)(v).)  Father also challenges the termination of his visitation with the children placed under a legal guardianship.  We affirm.

FACTS AND PROCEDURAL HISTORY

Appellants are the parents of twins Ke. S. (Ke.) and Ky. S. (Ky.), born in 2005; Kam. S. (Kam.), born in 2007; and Kap., born in 2013.  Mother also has a daughter, K.J., who was born in 1999.[2]  In December 2013, Santa Barbara County Child Welfare Services (CWS) detained all five children due to appellants' domestic violence, mental illness, substance abuse, and chronic neglect.  Appellants both had drug-related criminal histories.  Father also had prior charges of burglary, inflicting corporal injury on a spouse cohabitant, making terrorist threats, and numerous violations of parole.

K.J. and Kam. were placed together in a foster home, and the other three children were placed in another foster home.  At the conclusion of the detention hearing, the court ordered all five children detained and set the matters for a combined jurisdiction and disposition hearing.

In its jurisdiction and disposition report, CWS recommended that the children remain placed in out-of-home care and that appellants be offered reunification services.  CWS informed father that he could not visit the children until he provided a clean drug test.  Father initially agreed to take a test, but subsequently refused to do so.  Mother had failed a recent drug test and was informed that she had to test clean before any more visits were allowed.

At the conclusion of the jurisdiction and disposition hearing, the juvenile court sustained the petition and ordered reunification services.[3]  In its six-month status review report, CWS recommended that services be terminated for both appellant parents

---

[2] D.J., the presumed father of K.J., is not a party to this appeal.

[3] Father appealed the jurisdiction and disposition orders on the ground that CWS had failed to comply with the notice requirements of the Indian Child Welfare Act (ICWA).  The parties stipulated to a limited reversal for re-noticing under the ICWA.  After further notice was sent, the juvenile court found that proper notice had been given and that the ICWA did not apply.

and that the matters be set for a section 366.26 hearing. Father had been arrested and charged with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). Mother was arrested the same day on an outstanding warrant and was subsequently charged with possessing a smoking device (*id.*, § 11364). Both parents had failed to participate in their case plans and father was hostile to CWS staff. Neither parent had visited the children because they refused to take a drug test. Aside from a few phone calls, appellants had no contact with the children during the six-month review period.

The juvenile court terminated reunification services and set the matters for a section 366.26 hearing. Appellants were granted monthly supervised visits with the children conditioned on clean drug tests. In the months prior to the section 366.26 hearing, CWS unsuccessfully tried numerous times to schedule visits and drug tests. In its section 366.26 report, CWS recommended that parental rights be terminated as to Kap., Ke., and Ky., and that K.J. and Kam. be placed under legal guardianships. K.J. was in a group home, but CWS planned to move her into a relative placement with her aunt in Santa Maria with a plan of guardianship. Kam. was with an aunt in Northern California who wanted to be her legal guardian. Kap. Ke., and Ky. had been in the same foster home since their removal and the foster parents were committed to adopting all three children. Kap. was bonded with his foster parents and attached to Ke. and Ky. CWS had determined that the foster parents were a suitable adoptive placement for them and that another suitable placement could be found.

When the matters were called for hearing on February 9, 2015, appellants requested a trial confirmation hearing. The juvenile court scheduled the hearing for March 12, 2015, and ordered appellants to file offers of proof no later than a week prior to the hearing. Appellants did not file offers of proof. Counsel for K.J. and Kam. filed an offer of proof that the sibling relationship exception to adoption applied and requested a bonding study. The court granted the request and appointed Dr. Joyce M. Lunt, a

3

psychologist, to conduct the study. A contested section 366.26 hearing was set for May 19, 2015.

Dr. Lunt visited Ke., Ky., and Kap. in their placement, observed all five children's interactions during a two-hour visit, and interviewed all of the children except 18-month-old Kap. On April 29, 2015, Dr. Lunt issued a report opining that the children were bonded and that "it would be extremely detrimental for these youngsters to not have ongoing contact with their siblings."

At the May 19th contested hearing, all five children agreed through their attorneys to settle the contested hearing with a plan of termination of parental rights as to Kap., with a permanent plan of adoption, and legal guardianship as to the other four children. Appellants rested without requesting any argument. The matter was continued to July 2, 2015, for an updated case plan and formalization of Kam.'s legal guardianship with her relative care providers. Father was ordered to appear at the continued hearing and both parents were served by mail with notice of the hearing.

In an addendum report, CWS stated that father had been provided a visit with the children but arrived 15 minutes before the end of the visit. After the visit, Ky. said father had told her a "secret" that she and her siblings were "coming back to live with him after the [c]ourt hearing." Ky. "became tearful and expressed that she loved her foster home and was fearful of the father's home." CWS stated that "[t]he parents have repeatedly been instructed not to talk to the children about [c]ourt, their foster home or tell them that they will be coming back to live with the parents; however, they continue to do so during calls and this in person visit. For this reason, it is respectfully recommended that no in-person or telephone visitation be ordered."

Neither parent attended the July 2nd hearing and their attorneys rested on their behalves without arguing or requesting any changes in the proposed orders or case plans. At the conclusion of the hearing, the juvenile court referred the findings and orders to the judge who had presided over the settlement of the matter on May 19, 2015. On August 21, the findings and orders were signed. The order as to each child provides

4

that he or she "will have in person visitation with [his/her] siblings . . . , at least once per month. The care providers may facilitate more frequent visits as appropriate."

The orders also incorporate the settled case plan, which includes a closure visit between appellants and the children, contingent upon both parents providing clean drug tests 24 hours prior to the visit. Appellants' visitation with the children was otherwise terminated based on the finding that appellants' visits were "detrimental to the child's physical or emotional well-being . . . ." After the briefs were filed, the juvenile court awarded appellants one-hour monthly visits with Ke. and Ky. subject to various terms and conditions. [4]

## DISCUSSION

### *Sibling Relationship Exception (§ 366.26, subd. (c)(1)(B)(v))*

Appellants contend the juvenile court erred in failing to find that the termination of their parental rights as to Kap. was precluded by the sibling relationship exception set forth in subdivision (c)(1)(B)(v) of section 366.26. We agree with CWS that appellants forfeited this contention by failing to raise it below. (*In re Daisy D.* (2006) 144 Cal.App.4th 287, 291-292.)[5] Anticipating this conclusion, appellants alternatively assert that their attorneys' failure to argue the sibling relationship exception constitutes ineffective assistance of counsel. To establish this claim, appellants must

---

[4] On our own motion, we take judicial notice of these orders. CWS's motion to augment the record to include the orders is denied. (See *In re Marriage of Forrest & Eaddy* (2006) 144 Cal.App.4th 1202, 1209 [record on appeal cannot be augmented to include materials that were not before the juvenile court prior to ruling].)

[5] We reject appellants' assertion that their claim is preserved by K.J. and Kam.'s offer of proof that the sibling relationship exception applied. That offer of proof was made when it was contemplated that Kap., Ke., and Ky. would all be adopted. Moreover, the issue was rendered moot when all five children agreed through their attorneys to settle the contested hearing with termination of parental rights as to Kap. only. The court also made clear that appellants had to file offers of proof to contest the section 366.26 hearing, yet neither did so. Although their attorneys alluded to Kap.'s relationship with his siblings after the settlement agreement was announced, they both declined to assert that the sibling relationship exception applied.

demonstrate it is reasonably probable that the court would have found the sibling relation exception applied if counsel had argued for such a finding. (See *In re Ernesto* (2014) 230 Cal.App.4th 219, 223.) They fail to make this showing.

Section 366.26, subdivision (c)(1)(B)(v) provides an exception to the preference for adoption when the juvenile court finds termination of parental rights would be detrimental to the child because "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." "Reflecting the Legislature's preference for adoption when possible, the 'sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption. It only applies when the juvenile court determines that there is a "compelling reason" for concluding that the termination of parental rights would be "detrimental" to the child due to "substantial interference" with a sibling relationship.' [Citations.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 61.)

Establishing the sibling relationship exception would have required a showing that Kap. had a significant relationship with his siblings, that ongoing contact with them is in his best interest, that termination of that contact would be detrimental and that this outweighs the benefits of permanence though adoption. (See *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 951 [the juvenile court must "balance the beneficial interest of the child in maintaining the sibling relationship, which might leave the child in a tenuous guardianship or foster home placement, against the sense of security and belonging adoption and a new home would confer"].) No such showing could be made here. Kap. was only five months old when he was detained and only 22 months old when parental rights were terminated. Shortly after his detention, mother told the social worker he had

6

"lived with [his godmother] since he was born."  Since his removal, Kap. has lived with Ke. and Ky.  His other two siblings visited with him twice a month over the next 17 months.  Although he interacted with K.J. and Kam. and enjoyed their visits, there is nothing to demonstrate that the benefit of continuing his relationship with them outweighs the benefits he will derive from being adopted.  Moreover, the section 366.26 orders include continued visitation between all five children.[6]

Appellants offer Dr. Lunt's bonding study as proof that the sibling relationship exception applied.  Although Dr. Lunt opined that the children were bonded and that "it would be extremely detrimental for these youngsters to not have ongoing contact with their siblings," she did not discuss Kap. specifically or offer any explanation as to how her conclusion applied to him.  Kap. was only 18 months old when Dr. Lunt conducted her evaluation.  Although the doctor mentioned that Kap. enjoyed visiting with his siblings, she offered no insight as to how he would be impacted if the relationship did not continue.  (See *In re L.Y.L. supra*. 101 Cal.App.4th at p. 952 ["Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended"].)  More significantly, Dr. Lunt's opinion fails to support a finding that Kap.'s relationship with his siblings is so strong that it outweighs the benefits he will derive from being adopted.

Father also refers us to statements Lunt attributed to Kap.'s prospective adoptive mother.  According to Dr. Lunt, the prospective adoptive mother told her she was planning to move away with Kap., Ke., and Ky., change their names, and discontinue all contact with K.J. and Kam.  Father also notes that Dr. Lunt made statements critical of the prospective adoptive mother's parenting of the children.  Dr. Lunt's unsolicited opinions and discussions on this subject, however, are irrelevant to the issue at hand.  (*In re. Scott M.* (1993) 13 Cal.App.4th 839, 844 ["[Q]uestions concerning the 'suitability'

_____

[6] Appellants highlight K.J.'s representation that she was more like a mother to Kap. than his sibling.  This representation does not suggest, however, that Kap. believed K.J. was his mother or viewed her as such.  Moreover, other evidence indicated, Kap. was bonded to the prospective adoptive mother and viewed her as his mother.

of a prospective adoptive family are irrelevant to the issue whether the minors are likely to be adopted"].)  That issue is whether it is reasonably probable appellants would have met their "heavy burden" of showing that Kap.'s relationship with his siblings precluded his adoption if counsel had attempted to meet that burden.  (*In re Celine R.*, *supra*, 31 Cal.4th at p. 61.)  Because the record discloses no such probability, appellants' claim fails.  (*In re Ernesto*, *supra*, 230 Cal.App.4th at p. 223.)

*Visitation*

Father claims the juvenile court erred in terminating his visitation with Kam.[7]  Because he did not object to the termination of his visitation, his claim is forfeited.  The record belies his assertion that he had no opportunity to object.  His attorney stated on the record that he had reviewed the proposed findings and orders, which plainly provided that appellants' visitation would be terminated.  When asked if he was advocating for any changes, counsel submitted without objection.

Father alternatively challenges the termination of visitation under the rubric of ineffective assistance of counsel.  This claim fails because substantial evidence supports the court's finding that visitation would be detrimental to the child's well-being. (§ 366.26, subd. (c)(4)(C); *In re Ethan J.* (2015) 236 Cal.App.4th 654, 661.)  CWS recommended that visitation be terminated based on father's conduct at his last visit with the children.  After arriving only 15 minutes prior to the end of the visit, father once again violated the admonition that he refrain from talking about the children's foster homes or telling them they would be coming to live with him.  This emotionally manipulative behavior, coupled with father's history of drug use, neglect, aggression, and emotional abuse, was sufficient to support a finding that continued visitation " 'represent[ed] some danger to the child's physical or emotional well-being.' "  (*In re A.J.* (2015) 239 Cal.App.4th 154, 160.)  It is thus not reasonably probable that father would

---

[7] Father's briefs also challenge the denial of visitation as to Ke. and Ky.  As we noted *ante*, the juvenile court subsequently granted appellants monthly visitation as to both children.

have achieved a more favorable result had counsel objected to the termination of visitation. (*In re Ethan J.*, *supra*, 236 Cal.App.4th at p. 661; *In re Ernesto*, *supra*, 230 Cal.App.4th at p. 223.)

## DISPOSITION

The section 366.26 orders terminating parental rights as to Kap. S., with a permanent plan of adoption, and selecting legal guardianship as the permanent plan for K.J., Kam. S., Ke. S., and Ky. S., are affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Arthur A. Garcia, Judge
Denise de Bellefeuille, Judge

Superior Court County of Santa Barbara

_____


Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant T.S.

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant B.R.

Michael C. Ghizzoni, County Counsel, and Toni Lorien, Senior Deputy, for Plaintiff and Respondent