Filed 11/16/20  Y.L. v. Superior Court CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Y.L.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,<br><br>    Respondent;<br><br>DEPARTMENT OF SOCIAL SERVICES, COUNTY OF SAN LUIS OBISPO,<br><br>    Real Party in Interest. | 2d Juv. No. B306926<br>(Super. Ct. No. 19JD-00184)<br>(San Luis Obispo County) |

After a child is removed from parental custody in a dependency action, the trial court must, subject to certain statutory exceptions, order reasonable reunification services and

visitation.  (Welf. & Inst. Code, § 361.5, subd. (a).)[1]  The parent's failure to contact and visit the child is grounds for terminating services.  (§ 361.5, subd. (a)(2).)  Here a nine-year-old boy refused to go to supervised visits or have phone contact with his mother who had a history of mental health issues and was receiving treatment.  Y.L., the biological mother of J.L., seeks extraordinary writ relief from a July 29, 2020 order denying her petition for visitation (§ 388), and order terminating reunification services.  (Cal. Rules of Court, rule 8.452; Welf. & Inst. Code, § 366.26.)  We grant the petition and direct the trial court to vacate its order terminating reunification services and vacate the order setting the matter for a permanent placement hearing.

*Factual and Procedural History*

On July 29, 2020, the trial court terminated services at the 12-month review hearing.  Appellant had a history of depression, post-traumatic stress disorder, and alcoholism that resulted in two involuntary hospitalizations for depression, paranoia, and hallucinations.  It placed J.L. at risk of harm and resulted in two dependency actions.  In the first action, J.L. (ages 5 through 7) suffered regressive behaviors, vomited before supervised visits, and had toileting incidents.  (San Luis Obispo Sup. Ct. case No. 16JD00145.)  Appellant and J.L. were reunified and the case was closed in June 2018.

In May 2019, appellant stopped taking her medication, made bizarre 911 calls to the police, and said that she swallowed bleach while sleep walking.  The landlord reported that appellant was suffering a mental breakdown and had kept

---

[1] All statutory references are to the Welfare and Institutions Code.

J.L. home and out of school. When a police officer made a welfare check, appellant was bewildered and confused. J.L. tried to run to the officer for safety but appellant pointed a Febreeze bottle in J.L.'s face and yelled at him to sit down.

Appellant was gravely disabled and hospitalized from May 9, 2019 to May 22, 2019. The San Luis Obispo County of Department of Social Services (DSS) detained J.L. and placed him with the foster family who hosted him a year earlier. After the trial court sustained a petition for failure to protect (§ 300, subd. (b)(1)), it ordered services and weekly supervised visits. The first visits were cordial but J.L. said he was tired of appellant's lies and refused to go to supervised visits or take phone calls. J.L.'s therapist reported it would be detrimental to force visitation or conjoint therapy. The trial court reduced supervised visits to once a month and stated: "[W]e've got to go really slow[]. . . . I do not want to retraumatize [J.L.] again. . . . [H]e's obviously dealing with a lot of stuff."

J.L. feared that he would be forced to live with appellant and refused Zoom therapy even with the social worker sitting next to him. The social worker described J.L. as a very smart and active nine year old. He said he would not do therapy because appellant "will lie about everything she did. . . . '[I]f I agree to family therapy then they will say well you can do visits; then they will make me do visits and then they will say well you are doing visits you can go home; then they will send me home and then they will say mom is doing well and close my case and no one will help . . . [and] then she will stop taking her medications.'"

The therapist reported that J.L. was doing "extremely well" but "still not ready to participate in family

therap" and was learning to assert himself. The therapist did not want to "take away from that" and wanted J.L. to strengthen his ability to assert himself and "work on his feeling of guilt towards [appellant] and his ability to set appropriate boundaries with her."

*12-month Review Hearing*

At the 12-month review hearing, the trial court denied appellant's 388 petition to change visitation to twice a month and "lift supervision, begin overnights, and a 30[-]day trial visit . . . ." There was no change of circumstances. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) That was a given. J.L. did not want to see appellant. Appellant was staying sober and attending therapy but still trying to regain J.L.'s trust. The trial court said: "The reality in many of these cases is that the parent has irreparably damaged the relationship beyond salvage. And I think it's sad to say this is what's occurred here." The court noted that Covid "has impacted our whole county" and "we're having a virtual court right now, and therapy, by and large, is virtual, and visitation is sometimes virtual, and it's not the same . . . . It's just a deeply ingrained trauma that [J.L.] is going to need to work through as he grows up." "It would be incredibly detrimental *to return* [J.L.] to [appellant], and [appellant] herself, recognizes that." (Italics added.) The court terminated services and set the matter for a permanent placement hearing. (§ 366.26.)

*Reasonable Reunification Services*

The question presented is whether reasonable reunification services were provided after J.L. refused to go to supervised visits or maintain contact with appellant. It is a question that answers itself. Reunification services and parental

4

visitation and contact with the child go hand in hand. (See § 361.5, subd. (a)(2) [services may be terminated if parent fails to contact and visit child].) The legislative goal is reunification if possible. (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1218.)

At the 12-month review hearing, the trial court must determine whether the services offered were designed to aid the parent in overcoming the problems that led to the initial removal of the child. (§ 366.21, subd. (f)(1)(A).) There is no-one-size-fits all solution. "The court shall not order that a hearing pursuant to [s]ection 366.26 be held unless there is clear and convincing evidence that reasonable services have been provided or offered to the parent or legal guardian." (§ 366.21, subd. (g)(1)(C)(ii).) On review, the question "is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

The record shows that appellant had made significant progress dealing with her mental and substance/alcohol abuse issues. She was seeing a therapist, was drug free and sober, and agreed that J.L. was not ready to visit but hoped with time and more opportunities for visitation, J.L. would come around. That is what J.L.'s therapist recommended, more time. J.L., however, had other ideas and sent a four-page "Dear Judge" letter to the court and talked to the court in chambers three times. The therapist said that J.L. was empowering and asserting himself, and it was a good therapeutic sign.

The trial court was faced with the dilemma of balancing the competing interests of reunification and the welfare of J.L. It had to ensure that visitation (even Zoom visits

with the social worker seated next to J.L.) did not "jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).) There was no evidence that another six months of services and court ordered supervised visits would be detrimental to J.L. J.L. did not want to be "forced" to reunify with appellant and his therapist cautioned the court to go slow. Whether unsupervised visitation and reunification is possible with another six months of services is unknown. What we do know is that a trial court may not decline to enforce its own visitation order in deference to the wishes of the child. (*In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1505.) Nor can a court terminate dependency jurisdiction knowing that the child refused to participate in visitation. (*In re Ethan J.* (2015) 236 Cal.App.4th 654, 656; *In re Julie M.* (1999) 69 Cal.App.4th 41, 48–49 [juvenile court may not give child "absolute discretion" in deciding whether mother could visit].)

The statutory right to reunification services requires supervised visits and open lines of communication between the parent and child with appropriate time, place and manner restrictions to protect the well-being of the child. (See *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1376.) "[W]hile the juvenile court may allow the child to refuse to attend a particular visit, to prevent the child from exercising a de facto veto power, there must be some assurance that, should that occur, another visit will be scheduled and actually take place. The simplest— but, by no means, the only—way to accomplish this would be for the juvenile court to order a minimum number of visits per month and to impose any essential conditions (for example, whether the visits are to be monitored or occur in a neutral setting), while allowing the Department to organize other details of the visitation. In no event, however, may the child's wishes be

6

the *sole* factor in determining whether any visitation takes place, either as a formal matter or, as occurred in the case now before us, by effectively giving the children the power to veto all visits. [Citations]." (*In re S.H.* (2003) 111 Cal.App.4th 310, 319-320.)

*Disposition*

Let an extraordinary writ issue directing the trial court to vacate its July 29, 2020 finding that reasonable services were provided, and vacate its order terminating reunification services and setting a section 366.26 hearing. The trial court shall enter a new finding that reasonable reunification services were not provided, conduct a continued 12-month review hearing at the earliest convenient time, and direct DSS to file an amended case plan to enhance appellant's relationship with the child. At the continued 12-month review hearing, the trial court shall provide appellant an additional period of reunification services.

This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A) of the California Rules of Court.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, Acting P.J.

We concur:


PERREN, J.


TANGEMAN, J.

7

Charles S. Crandall, Judge

Superior Court County of San Luis Obispo

_____

Theresa G. Klein, for Petitioner.

No appearance for Respondent.

Rita L. Neal, County Counsel, Timothy McNulty, Deputy County Counsel, for Real Party in Interest.