Filed 4/11/22  In re V.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re V.C. et al., Persons Coming Under the Juvenile Court Law. | C094086 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. Nos. 53002473, 53002474) |
| Plaintiff and Respondent, | |
| v. | |
| A.C., | |
| Defendant and Appellant. | |

A.C., father of the minors V.C. and J.C. (father), appeals from the juvenile court's order terminating its jurisdiction over this dependency action and specifically objects to the visitation order.  (Welf. & Inst. Code, § 364.)[1]  Father contends the juvenile court improperly delegated its judicial authority to the minors as to whether any visitation

_____

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

would occur at all when it included language in the custody order that "visitation and contact is not to be forced." We shall affirm.

## I. BACKGROUND

On August 1, 2007, the Placer County Department of Health and Human Services (Department) filed a petition pursuant to section 300, subdivisions (a), (b), (c), and (i) on behalf of V.C. (born in 2006), J.C. (born in 2007), and the minors' half sibling T.G. (born in 1992). This petition alleged father physically abused V.C. and J.C., threatened to physically harm T.G., and engaged in acts of domestic violence against the mother in the minors' presence. The juvenile court sustained the petition. In 2008, the juvenile court terminated its jurisdiction over V.C. and J.C. and ordered the parents share joint physical and joint legal custody of the minors.

On July 23, 2020, the Department received a report from an anonymous caller stating father threatens to do sexual things to the minors when they did not do what they were told, he frequently punches them, and mother suffers from delusions and paranoia.

After interviews with mother and the minors, the Department filed a second petition on behalf of V.C. and J.C. pursuant to section 300, subdivisions (a), (c), and (d). Under subdivision (a), the Department alleged father punched the minors in the head and face, hit them in the face and groin, and threatened to hit them with a baseball bat. Under subdivision (c), the Department alleged father threatened the minors with physical violence and rape, and he belittled them, causing them to feel "angry, withdrawn, scared, and unsafe in his care." Finally, under subdivision (d), the Department alleged father had been convicted in 1986 of engaging in sexual acts with a minor, sexually abused a relative in 2008, showed pornographic images to the minors, and threatened to rape the minors.

The combined jurisdiction and disposition hearing was held on October 23, 2020. At this hearing, the court sustained an amended petition that struck the counts under section 300, subdivisions (a) and (d) and modified the count under subdivision (c) to

allege father engaged in inappropriate parenting behavior that caused the minors to feel angry, withdrawn, scared, and unsafe in his care. The revised allegation stated father punched the minors in the head and body, threatened to physically and sexually abuse them, showed them inappropriate content of a sexual nature, and used belittling language toward them. The juvenile court placed the minors with mother in family maintenance and ordered enhancement services for father.

Prior to the section 364 hearing, the Department recommended termination of jurisdiction and custody orders providing for joint legal custody to mother and father, sole physical custody to mother, and supervised visitation for father at his expense. The social worker stated the minors reported feeling safe and having their needs met on an ongoing basis while in mother's care. They were attending weekly therapy and V.C. indicated a recent desire to begin family therapy with father. During the reporting period, father showed a level of insight and remorse regarding the reasons the minors had been removed from his custody. The minors reported being uncomfortable having in-person visits with their father and mostly requested virtual visitation with father. The minors only asked for in-person contact on V.C.'s birthday, Christmas, and father's birthday.

The juvenile court held the section 364 hearing on April 20, 2021. Counsel for father agreed with the Department's recommendations to terminate dependency jurisdiction and for joint legal custody. In his request for visitation, father's counsel added that "the minors not be forced to visit." Father's counsel also argued the court should find father's progress had been excellent; order a minimum amount of visitation for father with the minors; and order joint physical custody or, in the alternative, unsupervised and overnight visitation immediately or after the completion of three conjoint therapy sessions between father and his sons.

The juvenile court found there was no longer any need for it to exercise jurisdiction over the minors and terminated their dependency status. It granted mother and father joint legal custody of the minors. The juvenile court's order also granted

3

mother full physical custody over the minors and established visitation for father. The visitation order states: "Supervised visits to take place at minimum two times per week and can be in person, phone, video. All contact, to include text, phone, email or in person visits, is to be supervised by a professional third party at father's expense, or by an agreed upon third party. Visitation and contact is not to be forced. . . . [¶] The father is not to call, text or visit the boys at any other time, beyond what is arranged via Family Wizard and supervised by a third party." The juvenile court also ordered, "Conjoint therapy is authorized at father's expense, but is not to be forced. Conjoint counseling will be with each child's individual therapists, when that therapist deems the child is ready to participate in conjoint therapy." After five conjoint therapy sessions with the minors, "contact to include texts, phone calls and emails may proceed as unsupervised and in person visitation may proceed unsupervised in a public setting, if the minors agree. . . . If the minors decline unsupervised visits in a public setting, the father can use the Family Wizard app to communicate if he will be arranging a supervised visit, by a professional third party at his expense or a third party agreed upon by the minors." At the hearing, the court clarified the intent of its custody order as follows: "After five sessions [the visitation] can move to unsupervised in a public place if the boys are willing to participate in that. The visits are not forced. If they say, 'No, I'm not willing to do that,' then the option is to continue with the third-party supervision."

Father timely appealed the termination order and, upon his motion, we construed his appeal to include all orders made at the April 20, 2021 hearing.

4

Father argues the juvenile court impermissibly delegated its judicial role as to whether any visitation would be allowed to the minors when it included the language "visitation and contact is not to be forced" in the visitation order. We disagree.[2]

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation. [Citations.] Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court." (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) " 'In matters relating to child custody and visitation rights, the trial court is vested with a wide discretion and its determination will not be disturbed in the absence of a manifest showing of abuse.' " (*In re Sofia M.* (2018) 24 Cal.App.5th 1038, 1044.)

Father argues *In re S.H.* (2003) 111 Cal.App.4th 310 requires us to reverse the judgment and remand the matter for further proceedings. In that case, the visitation order granted the mother the right to visitation, but stated, " 'if the children refuse a visit, then they shall not be forced to have a visit.' " (*Id.* at p. 313.) The order was silent on the frequency of the required visitation. (*Ibid*.) The mother challenged this order as an impermissible delegation of the court's judicial authority to the minors to determine visitation. (*Ibid*.) Division Seven of the Court of Appeal, Second Appellate District agreed and concluded this order abdicated the court's duty to determine visitation and thus constituted an invalid delegation of its judicial authority. (*Id.* at pp. 317, 319.) The appellate court noted, "the power to decide whether *any* visitation occurs belongs to the

---

[2] Given our conclusion the order is not an improper delegation of judicial authority, we need not address, nor do we decide, whether father may raise this issue on appeal because his counsel requested the condition that visitation not be forced and did not object to the court's order when rendered.

court alone." (*Id*. at p. 317.) The court concluded, "by failing to mandate any minimum number of monitored visits per month or even to order that *some* visitation *must* occur each month, the court's abstract recognition of [the mother's] right to visitation is illusory, transforming the children's ability to refuse 'a visit' into the practical ability to forestall any visits at all." (*Id*. at p. 319.) The court held, "while the juvenile court may allow the child to refuse to attend a particular visit, to prevent the child from exercising a de facto veto power, there must be some assurance that, should that occur, another visit will be scheduled and actually take place. The simplest—but, by no means, the only— way to accomplish this would be for the juvenile court to order a minimum number of visits per month and to impose any essential conditions (for example, whether the visits are to be monitored or occur in a neutral setting), while allowing the Department to organize other details of the visitation." (*Ibid*., fn. omitted.)

Contrasted with the lack of guidance from the juvenile court in *In re S.H.* is the order issued in *In re Danielle W.* (1989) 207 Cal.App.3d 1227. There, the juvenile court ordered the mother was entitled to visitation but stated all visitation would be at the social worker's discretion and the children's discretion, stating, " 'I am not going to force them to visit when they don't want to. But whenever they want to, it can be at a location selected by the Department of Children's Services, which should be designed to accommodate both the mother and the children.' " (*Id*. at p. 1233.) The *In re Danielle W.* court noted, "The nature of the task of the juvenile court system in responding to the rapidly changing and complex family situations which arise in dependency proceedings and the interests of judicial economy require the delegation of some quasi-adjudicatory powers to a member of the executive branch dedicated to the dependent child's welfare. As long as that role is limited and subject to supervision, as it was here, there is no violation of the separation of powers doctrine." (*Id*. at p. 1237.) The appellate court concluded this order did not improperly delegate the court's control over visitation, nor did it violate the separation of powers doctrine as an improper delegation of judicial

power.  (*Ibid.*)  Instead, the juvenile court properly ordered visitation under specific conditions that allowed the children to express their views regarding visitation but did not allow them to deny visitation altogether.  (*Ibid.*)  The appellate court opined an order that granted "the Department *complete* and *total discretion* to determine whether or not visitation occurs would be invalid. . . .  The juvenile court must first determine whether or not visitation should occur, as was done here, and then provide the Department with guidelines as to the prerequisites of visitation or any limitations or required circumstances."  (*Ibid.*)

Here, the juvenile court did not delegate its authority to the minors to determine whether visitation will occur in their sole discretion.  The juvenile court ordered visitation to occur.  In line with the guidance of *In re S.H.*, *supra*, 111 Cal.App.4th at page 319, it found father was entitled to supervised visitation a minimum of two times per week, either in person, by telephone, or by video conference.  Harmonizing the minimum number of visits language with the visits "not to be forced" language means the minors were not to be forced to attend any particular visit, but must attend at least two visits a week.  The court's intent in this regard can be further seen in its colloquy with counsel during the final disposition hearing.  There, the court noted if the minors were not amenable to "unsupervised" visits, the fallback position was the two supervised visits ordered each week.

Father argues this case is similar to *In re Ethan J.* (2015) 236 Cal.App.4th 654, 661-662, where the Court of Appeal concluded the juvenile court erred when it dismissed dependency jurisdiction knowing its visitation order would not be honored.  This argument lacks merit.  In that case, the court ordered supervised therapeutic visitation to be preceded by a therapeutic evaluation of the minor with the understanding it would not be forced.  (*Id.* at pp. 659, 661.)  At the time of the termination hearing, the court was on notice the minor refused to undergo therapeutic evaluation to determine whether visitation was detrimental to him and at the time the court terminated its jurisdiction, the

minor had successfully refused visitation for six months. (*Id.* at p. 661.) Under those circumstances, the appellate court concluded the juvenile court virtually guaranteed visitation would not occur when it terminated its jurisdiction over the minor. (*Ibid.*)

*In re Ethan J.* provides no guidance here. The visitation ordered by the court was not illusory. At the time the court issued its order, the minors here were regularly engaging in supervised visitation with father both on the phone and in person. There is no evidence the minors refused to visit with father. Further, as noted above, the visitation order here did not precondition the court ordered minimum visitation on a therapeutic session the minors could avoid or refuse. Rather, the order specifies a minimum number of two supervised visits per week and opens a path to unsupervised visitation in the future through the completion of conjoint therapy sessions. As a result, we find no abuse of discretion in the juvenile court's visitation order.

## III.  DISPOSITION

The juvenile court's orders are affirmed.

/S/

_____

RENNER, J.


We concur:


/S/

_____

ROBIE, Acting P. J.


/S/

_____

HOCH, J.

8