Filed 6/13/22 Certified for Publication 6/30/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re C.S., a Person Coming Under the Juvenile Court Law. | B312003 (Los Angeles County Super. Ct. No. 20CCJP05551A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CASHANDA P., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Cynthia A. Zuzga, Juvenile Court Referee. Affirmed.

Brian Bitker, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

—————————————

Cashanda P. appeals the order terminating dependency jurisdiction over her 12-year-old daughter, C.S., and the juvenile custody order providing for monitored visitation between Cashanda and C.S. in a therapeutic setting for up to twice a week for two hours per visit "when Minor's therapist says they can begin." Cashanda contends the juvenile court abused its discretion in terminating its jurisdiction with an order awarding sole physical and legal custody to C.S.'s father, Ryan S., without first providing services that attempted to repair the relationship between Cashanda and C.S. and the court's visitation order impermissibly delegated the authority to determine whether any visits between Cashanda and C.S. would occur to C.S.'s therapist. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Sustained Dependency Petition*

Cashanda has three children, each with a different father: C.S., nine-year old Cameron C., and two-year-old Conner M. On April 9, 2021, following Cashanda's no contest plea, the juvenile court sustained in part an amended dependency petition pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) (failure to protect) and (c) (serious emotional damage),[1] on behalf of all three children, finding, as to the

———————————

[1] Statutory references are to this code.

2

subdivision (b)(1) count, that Cashanda has a history of mental and emotional problems that, without treatment, placed the children at risk of serious physical harm and, as to the subdivision (c) count, that Cashanda emotionally abused C.S. "by using derogatory language toward the child on multiple occasions. The child has mental and emotional problems including suicidal ideation, and self-harming thoughts due to the mother's conduct." Cassandra's actions, the court found, placed C.S. and her two siblings at a substantial risk of suffering emotional harm.[2] The children's fathers, including Ryan, were nonoffending.

The evidentiary bases for the juvenile court's jurisdiction findings were contained in the jurisdiction/disposition report prepared by the Los Angeles County Department of Children and Family Services and admitted into evidence at the April 9, 2021 hearing. The report quoted C.S. as saying, "Once, I wanted to hurt myself because my mommy was really mean to me and called me fat. It made me want to cut myself with a knife, but I didn't do it. I wouldn't do anything like that." C.S. continued, "My mom used to say things to me like, 'I wish I never had you,' 'you're retarded,' and she would always call me a '[s]tupid bitch.' She would say those things to me almost every day. . . . She makes nasty and rude comments toward me. Whenever she calls me names, it makes me feel a little sad. . . . She'll talk to her

---

[2] The court dismissed an additional count under subdivision (b)(1) alleging Cashanda and Ryan had failed to obtain necessary therapeutic services for C.S.'s mental and emotional problems and a similar count under subdivision (j) (abuse of sibling).

friends on the phone about me and post things on Facebook about me."

Ryan confirmed Cashanda's abusive treatment of C.S. "The way my daughter was being treated was pretty bad. Distraught is not a good word to describe the way she was feeling. Traumatic is not a good word to describe what she had to go through. Once she was able to come and live here with me, it was like she had been kidnapped or a POW that was finally able to be home with family." Ryan described C.S.'s recurring nightmares "where someone is kidnapping her and taking her away from us" and told the social worker C.S. cried and hid in a closet when she thought Cashanda was coming to take her. Aja, Ryan's wife (C.S.'s stepmother), heard C.S. say she would hurt herself if she had to go back to live with Cashanda and reported that Cashanda had a history of calling C.S. demeaning and derogatory names, which appeared to traumatize the child. C.S.'s maternal grandmother and her maternal aunt were also told by C.S. that she would hurt herself if she had to return to Cashanda's care.

As for Cashanda's mental state, according to the maternal grandmother Cashanda had unaddressed mental health issues: Cashanda had been diagnosed with bipolar disorder and depression; she was prescribed psychotropic medication but had never been compliant. Cameron's father reported Cashanda had deep psychological issues and was "disturbed." Conner's father described Cashanda as "reckless" and stated she had tantrums, became violent and acted out for no apparent reason.

2. *Disposition*

At the disposition hearing held in the afternoon following the jurisdiction hearing, the court declared C.S. and her two siblings dependent children of the court and removed them from Cashanda's care and custody. The court ordered Cameron and Conner to remain released in the homes of their fathers under the supervision of the Department and directed Cashanda to participate in enhancement services, including individual counseling with a licensed therapist.

C.S. was also placed with her father. After stating its view that there was no hope of Cashanda reunifying with C.S., the court immediately terminated dependency jurisdiction over C.S. and stated it would enter a juvenile custody order granting sole physical and legal custody of C.S. to Ryan with monitored visitation for Cashanda in a therapeutic setting. The custody order entered the following week provided for monitored visitation in a therapeutic setting for Cashanda twice a week for two hours per visit "when Minor's therapist says they can begin."

## DISCUSSION

1. *The Court Did Not Abuse Its Discretion in Terminating Jurisdiction over C.S. Without Providing Services to Cashanda*

As this court explained in *In re Destiny D.* (2017) 15 Cal.App.5th 197, 205-206, "At the jurisdiction stage of a dependency proceeding, the court determines whether the child is a person described by section 300. [Citations.] If the juvenile court finds a basis to assume jurisdiction, the court is then required to hear evidence on the question of the proper disposition for the child. [Citations.] (Fn. omitted.) Typically, once the child has been adjudged to be a dependent child

5

pursuant to section 360, subdivision (d), the juvenile court determines what services the child and family need to be reunited and free from court supervision. [Citations.] The court then sets a review hearing, which must be held within six months, to evaluate the family's circumstances and decide whether continued dependency jurisdiction is necessary." However, because the Legislature has "grant[ed] the juvenile court broad authority to enter orders to protect a dependent child and reunite the family and terminate jurisdiction as quickly as possible" (*id.* at p. 207), the court has discretion at the close of the disposition hearing "to terminate dependency jurisdiction when the child is in parental custody and no protective issue remains." (*Ibid.*; accord, *In re D.B.* (2020) 48 Cal.App.5th 613, 624 [if the child is in parental custody and juvenile court services and ongoing supervision are not necessary to protect the child from harm, the juvenile court's obligation to reunite the family and terminate jurisdiction as quickly as possible includes the discretion to terminate jurisdiction at disposition].)[3]

---

[3] We explained in *In re Destiny D., supra*, 15 Cal.App.5th at page 208, that the conclusion the juvenile court may in an appropriate circumstance terminate jurisdiction at the close of a disposition hearing was consistent with (even arguably compelled by) the court's authority under section 361.2 to place a dependent child with a noncustodial parent at disposition and order that the parent become the legal and physical custodian of the child. "It simply makes no sense to conclude, as [appellant father] urges, that the Legislature intended to authorize the juvenile court to terminate its jurisdiction at disposition after placement of a child with a noncustodial parent when there is no longer a reason for court supervision and not afford the juvenile court the same discretion when the child has been released to a custodial parent

6

C.S.'s safety was endangered by her exposure to Cashanda's abusive parenting, and the court's order awarding Ryan sole physical and legal custody while limiting Cashanda to monitored visits in a therapeutic setting resolved that issue. There was no longer any reason for court supervision.

Cashanda's argument that terminating dependency jurisdiction deprived her of the opportunity to repair her relationship with C.S. is misplaced. Because C.S. remained with Ryan, a custodial parent, Cashanda was not entitled to reunification services. (See § 16507, subd. (b) ["[f]amily reunification services shall only be provided when a child has been placed in out-of-home care, or is in the care of a previously noncustodial parent under the supervision of the juvenile court"]; *In re Destiny D.*, *supra*, 15 Cal.App.5th at p. 212 [when child remains placed with one of two custodial parents, parent not retaining custody is not entitled to reunification services]; see also *In re A.L.* (2010) 188 Cal.App.4th 138, 145 [no reunification services are called for when a child is not removed from her custodial parent].)

Nor was C.S. entitled to what are referred to as enhancement services, "child welfare services offered to the parent not retaining custody, designed to enhance the child's relationship with that parent." (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1497, fn. 1; see *In re A.C.* (2008) 169 Cal.App.4th 636, 642, fn. 5 ["'enhancement' services are 'not designed to reunify the child with that parent, but instead to enhance the child's relationship with that parent by requiring that parent to address the issues that brought the child before

and orders made at disposition have fully resolved any issue of continuing risk of harm." (*In re Destiny D.*, at p. 209.)

7

the court'"].)  An order for enhancement services is subject to the court's discretion.  (See § 362, subd. (a); *In re Destiny D.*, *supra*, 15 Cal.App.5th at p. 212; *In re A.L., supra,* 188 Cal.App.4th at p. 145.)  Here, the Department was ordered at the detention hearing in October 2020 to provide Cashanda "predisposition family reunification services," including referrals for a psychiatric assessment and mental health treatment.  The court also ordered immediate therapy for C.S. and conjoint counseling for C.S. and Cashanda in a therapeutic setting once that was approved by C.S.'s therapist.  The court's decision six months later not to continue jurisdiction over C.S. simply to provide additional, to-date-unsuccessful services for Cashanda, even though the child was safely placed with her father, was neither arbitrary nor irrational.  (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [under abuse of discretion standard, order must be affirmed unless juvenile court has ""'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination"'"]; *In re Destiny D.,* at p. 213 [same].)

Cashanda's reliance on *In re Ethan J.* (2015) 236 Cal.App.4th 654 is unpersuasive.  The juvenile court in *In re Ethan J.* had ordered a permanent plan of legal guardianship for eight-year-old Ethan.  Ethan's maternal grandmother was appointed Ethan's legal guardian.  The court initially ordered one "unforced and unsupervised" visit per month for Ethan's mother at her residence.  (*Id.* at p. 657.)  The court subsequently ordered more liberal visitation, to be arranged by the mother and the maternal grandmother, who had a strained relationship.  Ethan, however, refused to visit with his mother.  (*Id.* at p. 659.)  At a further hearing the court ordered therapeutic supervised visitation between the child and his mother but required Ethan

8

be evaluated by a therapist before the first joint session was scheduled. Ethan refused to be transported to the therapist; explained he had no desire to visit with his mother, who had said she wished the maternal grandmother was dead; and insisted speaking to a therapist would not be helpful. (*Ibid.*) The juvenile court terminated dependency jurisdiction, explaining, "'[I]f I continue dependency . . . it's just going to exacerbate the anger. It's [a] difficult if not impossible situation but there's [nothing] I can do about it.'" (*Ibid.*)

The court of appeal reversed. The court first explained that, when, as in the case before it, a relative has been appointed a child's legal guardian and the child had been in the legal guardian's home for at least six months, section 366.3, subdivision (a), required the juvenile court to terminate dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship, absent a finding of "exceptional circumstances." (*In re Ethan J.*, *supra*, 236 Cal.App.4th at p. 660.) The child's refusal to agree to any visits, the appellate court concluded, constituted such an exceptional circumstance "because it effectively precluded any prospect of visitation" and left the mother without any viable legal remedy. (*Ibid.*) The court emphasized that section 366.26, subdivision (c)(4)(C), requires the juvenile court in selecting legal guardianship as a child's permanent plan to make an order for visitation with the parents unless it finds that visitation would be detrimental to the physical or emotional well-being of the child. Yet the juvenile court had terminated its dependency jurisdiction without a finding visitation would be detrimental to the child while recognizing its visitation order was not going to be honored. As the court observed, "Ethan had successfully refused visitation for

approximately six months.  Thus, by its order, the juvenile court virtually guaranteed that visitation would not occur." (*In re Ethan J.*, at p. 661.)

Both the legal context and factual circumstance of the case at bar are quite different from the situation before the court in *In re Ethan J.*, *supra*, 236 Cal.App.4th 654.  Unlike section 366.26, subdivision (c)(4)(C), which mandates visitation between child and parents when legal guardianship has been ordered, absent a finding that visitation would be detrimental to the child, when dependency jurisdiction is terminated with the child in the custody of one of his or her parents, section 362.4, subdivision (a), commits to the sound discretion of the juvenile court the authority to make an order determining a noncustodial parent's visitation.  Unlike the mother in *In re Ethan J.*, Cashanda had no right to visitation and, therefore, no basis for requesting additional therapeutic services with her child that would justify continuing dependency jurisdiction.

Equally important, unlike the child in *In re Ethan J.*, who refused to visit his mother and also refused to see a therapist to discuss the problem, the record before the juvenile court indicated C.S. "was working with her therapist to work up to having those therapeutic visits with Mom."  There was no suggestion the visitation ordered by the court would not, in fact, occur.  Under these circumstances, with C.S. safe in the care and custody of her father, terminating dependency jurisdiction was entirely appropriate.  Any future issues regarding visitation can be addressed by the family court, which has ongoing jurisdiction over custody and visitation now that dependency jurisdiction has been terminated.  (See § 364.2, subds. (b), (c); *In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1456 [following termination of dependency

jurisdiction and entry of a juvenile court custody and visitation order, any decision to modify that order is within the province of the family court].)

2. *The Court Did Not Impermissibly Delegate Authority over Visitation to C.S.'s Therapist*

The Supreme Court in *In re Chantal S.* (1996) 13 Cal.4th 196 considered a juvenile custody order issued on termination of dependency jurisdiction that ordered visitation between the child and her father to be facilitated by the child's therapist but not to begin until "father's chosen therapist determined father had made 'satisfactory progress for a time'" (*id.* at p. 213). The Court rejected the father's argument the order improperly delegated judicial authority to the two therapists. (*Ibid.*) The Court first observed the order gave the child's therapist no discretion regarding visitation. (*Ibid.*) The Court then explained, because the juvenile court had apparently concluded it would be detrimental to the child for visitation with the father to begin immediately, the juvenile court had two, entirely appropriate options: It could deny all visitation and leave it to the father to seek a modification of the order in family court once he could demonstrate a change in circumstance; or it "could issue the order it did, specifying that visitation commence in a carefully restricted setting when father's chosen therapist determines that father has progressed satisfactorily." (*Id.* at pp. 213-214.) We summarized the holding of *In re Chantal S.* in the slightly different context of visitation as an element of reunification services in *In re S.H.* (2003) 111 Cal.App.4th 310, 319, explaining, "[T]he Department and mental health professionals

11

working with it and with the dependent child may determine when visitation should first occur."[4]

That is precisely the nature of the juvenile court's visitation order here.  Rather than prohibiting all visitation, leaving it to Cashanda to seek a modification in family court at some future point when C.S. has progressed in her therapy and immediate visitation would not threaten her emotional stability, the juvenile court ordered visitation and specified the frequency and length of visits, but reserved to C.S.'s therapist the determination when it would be safe for C.S. to begin visits with her mother in a therapeutic setting.

Notwithstanding the Supreme Court's approval of a substantively identical visitation order in *In re Chantal S.*, Cashanda contends the juvenile court's order in this case impermissibly delegated judicial authority to C.S.'s therapist.  To make this argument, Cashanda first cites case law holding it is impermissible for the court to authorize a third person, whether social worker, therapist or the child, to determine whether any visitation will occur.  (See, e.g., *In re Julie M.* (1999) 69 Cal.App.4th 41, 51 [order giving child the option to either consent or refuse visits with mother unconstitutionally abdicated court's discretion to determine whether visitation would occur]; *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1478-1479 [order

---

[4]     We grounded our analysis of the visitation order challenged in *In re S.H.*, *supra*, 111 Cal.App.4th 310 on the fundamental principle that "[v]isitation is a necessary and integral component of any reunification plan." (*Id.* at p. 317.)  Here, of course, jurisdiction was terminated contemporaneously with issuance of the custody and visitation order; there was no reunification plan for Cashanda.

12

providing "Father has 'no visitation rights without permission of minors' therapists,'" thus giving children's therapist sole discretion to determine whether visitation with father will occur, constituted unlawful delegation of judicial authority]; see also *In re S.H.*, *supra*, 111 Cal.App.4th at p. 418 ["[t]he discretion to determine whether any visitation occurs at all 'must remain with the court, not social workers and therapists, and certainly not with the children'"].)

Cashanda then asserts, contrary to the express wording of the order, that C.S.'s therapist had discretion to decide *whether* visits would occur, not simply *when* they would begin. Cashanda purports to support this through-the-looking-glass interpretation of the order's language[5] by noting no criteria were established by which the therapist was to assess when it would be sufficiently safe for C.S. to see her mother and suggesting that it was the child's therapist, as in *In re Chantal S.,* not the parent's who was to judge when visits should begin, effectively gave the child a veto over visitation.

None of these purported distinctions withstands analysis. Neither C.S. nor her therapist had a veto power over visitation with Cashanda. As discussed, the juvenile court ordered visits were to occur and prescribed how frequently and for how long. The therapist's only role, as in *In re Chantal S.*, was to decide when it was safe for visits to begin: The limited nature of that discretion is the same as it was in *In re Chantal S.* In addition, because the juvenile court's concern was for C.S.'s reaction to

---

[5] "'When I use a word,' Humpty Dumpty said . . . , 'it means just what I choose it to mean—neither more nor less.'" (Carroll, Through The Looking Glass (1871), as quoted in *Ruiz v. Bally Total Fitness Holding Corp.* (1st Cir. 2007) 496 F.3d 1, 8.)

Cashanda—Cashanda's verbal abuse triggered traumatic emotions in C.S.—it was certainly reasonable for C.S.'s therapist, not Cashanda's, to make that decision.  Finally, although, as Cashanda argues, our colleagues in Division Four of this court in *In re Donnovan J., supra*, 58 Cal.App.4th 1474 expressed concern about the absence of criteria "such as satisfactory progress" in the context of a visitation order that denied any visitation until the child's therapist approved, here the court had been advised C.S. was working with her therapist toward having visits with Cashanda.  Even if "satisfactory progress" were a meaningful benchmark—a somewhat doubtful proposition—it is reasonably implied in the court's order in these circumstances.

In sum, the visitation order granting Cashanda visitation rights and expressly stating the frequency and duration of visits, while requiring C.S.'s therapist to approve the start of those visits, did not constitute an unlawful delegation of judicial authority.

## DISPOSITION

The order terminating jurisdiction and the juvenile custody order are affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

14

Filed 6/30/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re C.S., a Person Coming Under the Juvenile Court Law. | B312003 |
| | (Los Angeles County Super. Ct. No. 20CCJP05551A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CASHANDA P.,<br><br>Defendant and Appellant. | ORDER CERTIFYING OPINION FOR PUBLICATION (NO CHANGE IN THE APPELLATE JUDGMENT) |

THE COURT:

The opinion in this case filed June 13, 2022 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the plaintiff and respondent's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

PERLUSS, P. J.          SEGAL, J.          FEUER, J.