Filed 7/16/25  In re Royal B. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| In re ROYAL B., a Person Coming Under the Juvenile Court Law. | B337653 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. VIVIAN B., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 22LJJP00357B) |

APPEAL from an order of the Superior Court of Los Angeles County, Donald A. Buddle, Jr., Judge.  Dismissed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Vivian B. appeals from the juvenile court's order denying her petition under Welfare and Institutions Code section 388[1] asking the court to reinstate family reunification services. While this appeal was pending, the juvenile court selected a permanent plan of legal guardianship for her two-year-old son Royal B. and terminated its dependency jurisdiction. Vivian did not appeal from those orders. We conclude that, because we cannot provide Vivian any effective relief, the appeal is moot and that, even if it were not moot, the juvenile court did not err in denying her section 388 petition.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Juvenile Court Sustains a Petition and Removes Royal and His Older Sister from Vivian*

We described much of the factual and procedural background of these proceedings in Vivian's prior appeal, which was from the juvenile court's disposition order removing Royal. (See *In re Journee B.* (Mar. 18, 2024, B325829) [nonpub. opn.] (*Journee B.*).) In August 2022 Vivian reported that her

_____

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

2

11-year-old daughter Journee B. was missing.[2]  A sheriff's deputy found Journee, who said she ran away because Vivian became angry and hit her with a cellphone charger cord when Journee could not remember her email password.  Journee had scabs and abrasions on her arm and leg "consistent with . . . being struck by a thin cable."  The deputy arrested Vivian on suspicion of child abuse, and the Los Angeles County Department of Children and Family Services took Journee and Royal into protective custody.  The People charged Vivian, who denied Journee's claims, with child abuse under circumstances or conditions likely to cause great bodily injury or death, in violation of Penal Code section 273a, subdivision (a).  (*Journee B.*, *supra*, B325829.)

In December 2022 the juvenile court sustained a petition under section 300, subdivisions (a), (b), and (j).  The court found (1) Vivian physically abused Journee, endangering her physical health, safety, and well-being and placing Journee and Royal at risk of serious physical harm; (2) Vivian had a history of engaging in violent altercations with her partner, Rayshon S., in the children's home, and Vivian's failure to protect the children from Rayshon endangered Journee's and Royal's physical health and safety and placed them at risk of serious physical harm; (3) Vivian's current abuse of marijuana rendered her incapable of providing regular care for Journee and Royal; and (4) Vivian medically neglected Journee, endangering her physical health and safety and placing Journee and Royal at risk of serious physical harm.  (*Journee B.*, *supra*, B325829.)

At disposition the court removed Journee and Royal from Vivian.  The court ordered Vivian to participate in domestic

---

[2]     The court terminated jurisdiction over Journee, who died in November 2023.

3

violence counseling, individual counseling, and anger management and parenting classes, and to undergo drug testing. The court also ordered monitored visitation. Vivian appealed from the court's order removing Royal. We affirmed. (*Journee B.*, *supra*, B325829.)

B.  *The Juvenile Court Terminates Vivian's Reunification Services*

At the six-month review hearing under section 366.21, subdivision (e), on August 29, 2023 the juvenile court found Vivian had made partial progress in her case plan. The court stated that Vivian had not completed her case plan and that she removed an ankle monitor to avoid arrest on an outstanding warrant. The court found by clear and convincing evidence that the Department offered reasonable services, that Vivian did not regularly participate or make substantive progress in her case plan, that there was no substantial probability Royal would be returned to Vivian before the 12-month review hearing, and that it was in Royal's best interests to set a selection and implementation hearing under section 366.26. The court also terminated family reunification services. At the February 29, 2024 permanency planning review hearing the court selected legal guardianship as the permanent plan.

C.  *The Juvenile Court Denies Vivian's Section 388 Petition Seeking Additional Reunification Services*

In March 2024 Vivian filed a petition under section 388 asking the juvenile court to return Royal to her, reinstate family reunification services, or liberalize her visits. Vivian claimed circumstances had changed because she had completed parenting

and anger management classes and a 26-week domestic violence course, attended individual counseling sessions to address case issues and the death of Journee, and maintained regular weekly contact and visits with Royal. Vivian alleged her request was in Royal's best interests because she and Royal had an "established bond and relationship," Vivian had "been continuously working on rebuilding her life," she had "taken accountability for past mistakes," and Royal demonstrated "he loves his mother and loves staying with her." Vivian submitted a declaration stating that she turned herself in "to resolve the outstanding warrant" and that "the criminal case charges have all been dismissed." The court set a hearing on Vivian's petition and ordered the Department to file a response.

The Department opposed the petition. The Department stated that Vivian "failed to demonstrate her ability or willingness to control her temper and refrain from making verbal insults and threats" and that, two days after Vivian filed her petition under section 388, she sent the social worker a text saying she wanted to slap her.

The juvenile court denied the petition. The court ruled that, though Vivian had "improved," she was still "threatening people" and that she needed to improve her relationship with her father, Royal's caregiver. Vivian timely appealed from the juvenile court's order denying the petition under section 388.

D. *The Juvenile Court Appoints Legal Guardians and Terminates Jurisdiction*

At the section 366.26 hearing on July 15, 2024 the juvenile court selected a permanent plan of legal guardianship for Royal, appointed Vivian's father and his wife as legal guardians, and

terminated its jurisdiction.[3]  Vivian did not appeal from the July 15, 2024 order.

## DISCUSSION

### A.  *Vivian's Appeal Is Moot*

#### 1.  *Applicable Law and Standard of Review*

"Juvenile dependency appeals raise unique mootness concerns because the parties have multiple opportunities to appeal orders even as the proceedings in the juvenile court proceed."  (*In re N.S.* (2016) 245 Cal.App.4th 53, 59.)  The "'critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.'"  (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163; see *In re D.P.* (2023) 14 Cal.5th 266, 275; *In re Gael C.* (2023) 96 Cal.App.5th 220, 264.)  An "'appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief.'"  (*Rashad D.*, at p. 163.)  "A reviewing court must "'decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding."'"  (*D.P.*, at p. 276.)  ""'When no effective relief can be granted, an appeal is moot and will be dismissed."'"  (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1050-1051.)

Even when a case is moot, a reviewing court has "'inherent discretion'" to reach the merits of an appeal.  (*In re D.P.*, *supra*,

---

[3]  We take judicial notice of the juvenile court's July 15, 2024 order.  (See Evid. Code, §§ 452, subd. (d), 459.)

14 Cal.5th at p. 282.) A reviewing court generally will exercise that discretion when a case involves an issue of broad public interest that is likely to recur, when the controversy between the parties may recur, or when a material question remains for the court's determination. (*Ibid.*)

### 2. *Vivian's Appeal Is Moot Because We Cannot Provide Her Effective Relief*

Vivian argues the juvenile court erred in denying her section 388 petition. She contends she met her burden to prove that circumstances had changed and that ordering further reunification services was in Royal's best interests.

Vivian's appeal is moot because we cannot provide her any effective relief. As discussed, several months after the juvenile court denied Vivian's section 388 petition, the court selected a permanent plan of legal guardianship, appointed guardians, and terminated its jurisdiction. Because Vivian did not appeal from those orders, "they are not now before us or otherwise subject to appellate review." (*In re Rashad D.*, *supra*, 63 Cal.App.5th at p. 164.) Thus, even if we were to reverse the juvenile court's order denying Vivian's section 388 petition, the juvenile court could not reinstate family reunification services because reunification services are not available once the court holds a section 366.26 hearing and selects legal guardianship as the permanent plan. (See *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 623, fn. 2 [petition for writ of mandate challenging the juvenile court's order terminating reunification services was moot because the father did not appeal from the juvenile court's subsequent order selecting legal guardianship as the permanent plan]; see also *In re Marilyn H.* (1993) 5 Cal.4th

7

295, 309 [a section 388 petition "may be used to raise the [reunification] issue in the trial court prior to the section 366.26 hearing"].)

In a supplemental brief Vivian argues the appeal is not moot because "the juvenile court still has jurisdiction over Royal and may re-open the matter to rectify an erroneous denial of reunification services." When the court selected a permanent plan of legal guardianship for Royal, however, it terminated its dependency jurisdiction and retained jurisdiction only over the guardianship. (See § 366.3, subd. (a)(3) [after appointing a relative or nonrelative extended family member as a child's legal guardian, the juvenile court shall "terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship"]; § 366.4, subd. (a) ["[a]ny minor for whom a guardianship has been established resulting from the selection or implementation of a permanency plan pursuant to Section 366.26 . . . is within the jurisdiction of the juvenile court"].) The juvenile court's retention of jurisdiction over the guardianship allows the court to hear "any motions relating to that guardianship" (*In re D.R.* (2007) 155 Cal.App.4th 480, 487), such as a petition under section 388 to modify a visitation order (*In re Ethan J.* (2015) 236 Cal.App.4th 654, 661), to appoint a successor guardian (*In re R.N.* (2009) 178 Cal.App.4th 557, 566), or to terminate the guardianship (*In re N.B.* (2021) 67 Cal.App.5th 1139, 1145).

To reinstate Vivian's reunification services, however, the juvenile court would have to revoke or terminate the guardianship and reinstate its dependency jurisdiction. (See *In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1218 [parent may file a petition under section 388 to "terminate a legal

8

guardianship" and "attempt reunification with his or her children"].) If in the future the court revokes or terminates the guardianship, at Vivian's request or for any other reason, Vivian may request reunification services. (See § 366.3, subd. (b)(3) [after the juvenile court has revoked or terminated a legal guardianship, the parents are "entitled to participate in the new permanency planning hearing" and "may be considered as custodians," and the "court may, if it is in the best interests of the child, order that reunification services again be provided to the parent or parents"]; *In re S.H.* (2011) 197 Cal.App.4th 1542, 1553 ["'when a change in a guardianship is made, the dependency court must provide notice to parents, consider and evaluate possible custody solutions, and consider whether to provide reunification services'"].)

Exercising our discretion to hear Vivian's moot appeal is not appropriate here. Vivian does not challenge jurisdiction findings that carry a particular stigma or that might affect future dependency proceedings. The case became moot because the court selected legal guardianship for Royal, not because Vivian promptly complied with her case plan. No other factor justifies reaching the merits of her moot appeal. (See *In re D.P.*, *supra*, 14 Cal.5th at p. 286 ["no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal"].)

B. *The Juvenile Court Did Not Err in Denying Vivian's Section 388 Petition*

Even if Vivian's appeal were not moot, the juvenile court did not err in denying her section 388 petition to reinstate reunification services.

1. *Applicable Law and Standard of Review*

Section 388, subdivision (a)(1), provides: "Any parent or other person having an interest in a child who is a dependent of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." "The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.)

"'Not every change in circumstance can justify modification of a prior order.'" (*In re N.F.* (2021) 68 Cal.App.5th 112, 120; see *In re A.A.* (2012) 203 Cal.App.4th 597, 612.) "'"[T]he change in circumstances must be substantial."'" (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122; see *In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1194.) "A parent establishes a substantial change of circumstances for purposes of section 388 by showing that, during the period between termination of reunification services and the permanency planning hearing, he or she has resolved the previously unresolved issues supporting juvenile court jurisdiction." (*In re J.M.* (2020) 50 Cal.App.5th 833, 846; see *A.A.*, at p. 612.)

Because Vivian had the burden to demonstrate there was new evidence or a change of circumstance, we review the juvenile court's finding she failed to meet her burden by determining whether the evidence compels a finding in her favor on that issue

10

as a matter of law.  (See *In re N.O.* (2019) 31 Cal.App.5th 899, 925-926; *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1163.) "Specifically, we ask 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*In re S.G.* (2021) 71 Cal.App.5th 654, 671; see *In re Luis H.* (2017) 14 Cal.App.5th 1223, 1227.)

We review for abuse of discretion the juvenile court's ruling it was not in Royal's best interests to reinstate Vivian's reunification services.  (See *In re D.P.*, *supra*, 14 Cal.5th at p. 287; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)  "We do not inquire whether substantial evidence would have supported a different order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court.  [Citation.]  We ask only whether the juvenile court abused its discretion with respect to the order it made." (*In re Matthew M.*, *supra*, 88 Cal.App.5th at p. 1195; see *Stephanie M.*, at p. 319.)

2.     *The Evidence Did Not Compel a Finding of Changed Circumstances*

Vivian argues she showed changed circumstances by presenting evidence that, after the juvenile court terminated her reunification services, she completed a course in anger management,[4] "attended individual counseling sessions to

---

[4]     Vivian also cites evidence she completed courses on domestic violence education and parenting skills, but she completed those courses before the court terminated her reunification services.

11

address case issues and the death of her daughter," began taking medication prescribed by her therapist, and resolved the outstanding warrant against her. Vivian submitted a declaration admitting that she had allowed "her anger and past struggles to control her actions" and asserting that she was "rebuilding her life and developing healthy coping mechanisms."

Despite Vivian's progress in the seven months since the juvenile court terminated her reunification services, the evidence did not compel a finding Vivian had resolved the previously unresolved issues supporting the juvenile court's jurisdiction— most notably, Vivian's physical abuse of Journee and Vivian's explosive temper.[5] The juvenile court sustained the initial petition against Vivian based on evidence Vivian hit Journee with a cellphone cord, a broom handle, and a pole; dragged Journee by the hair; and threatened her with a taser. Vivian never acknowledged physically abusing Journee. While the case was pending, Vivian at times behaved in a volatile, erratic, and belligerent manner toward law enforcement, Department employees, and her father. Even when Vivian appeared in court for the jurisdiction and disposition hearing in December 2022, she interrupted the juvenile court, stated "I ain't doing none of my services" and had to be removed from the courtroom.

At times Vivian behaved unpredictably and violently around Royal. In April 2023 Vivian's father was monitoring Vivian's visit with Royal at a park. Vivian wanted Royal to sit

---

[5] Vivian also failed to resolve the issue of her drug use. Vivian did not show up for most of her court-ordered drug testing appointments. She twice tested positive for methamphetamine and once for marijuana. Vivian admitted using marijuana, but denied using methamphetamine.

and eat with her, but Royal wanted to play. When Vivian's father offered to play with Royal while Vivian finished eating, Vivian became angry, accused her father of "trying to take over her visit," and yelled and cursed at him. Vivian's father ended the visit. As he walked to his car carrying Royal, Vivian followed her father and threw soda at him. After Vivian's father and Royal got into the car, Vivian hit the car and threatened to "bust [the] windows out." Vivian also went to her father's home, rang the doorbell, knocked on the door, and said, "stop playing with my fucking kids before I break your face bitch."

By the time of the six-month review hearing in August 2023, Vivian had shown improvement in controlling her temper. Her father testified that, though Vivian used to "curse" or "talk loud" at him, in the last few months she was "a lot calmer and nicer," and he described Vivian's behavior as "a big turn around." Vivian behaved appropriately at the review hearing, and the court stated, "I just want to let you know that the court is taking note today of how you reacted." Nonetheless, the juvenile court terminated Vivian's reunification services because the court found there was no substantial probability Royal would be returned to Vivian before the 12-month review hearing.

Even after the court terminated her reunification services, Vivian continued to have angry outbursts. On March 12, 2024, while the social worker was at the home of Vivian's father, Vivian arrived unannounced and demanded to see Royal. Royal heard Vivian and came running to the door. Vivian was "talking mess," and Vivian's father closed the door in her face. Although Vivian's father was not worried because he knew "all Vivian is going to do is run her mouth," the social worker was afraid and had to "sneak" out through the garage. On March 19, 2024, two days

after Vivian filed her section 388 petition, she sent a text message to the social worker stating: "If I could get away with it, I'll slap the fuck out of you for playing with my son."

Vivian attempts to minimize these confrontations by describing them as "isolated incidents of reactive language and conflict with professionals." She argues that, while her text to the social worker was "inappropriate," she did not act on the threat or "pose any physical threat to Royal or others." As Vivian told the Department's investigator: "I shouldn't have done that. . . . I just got so mad. But here's what I'm trying to say, it's just words. They try to characterize my words as if they're actions. I said IF I could. IF. I didn't say I was going to. It was just words. Where I came from, words are just that, words. If I say I'm going to do something, then that's one thing but if I say I wish I could do something, that's different." At the hearing on her section 388 petition Vivian testified that her text to the social worker was not a threat because she "said 'if,'" that she knew she "shouldn't have said it," but that "it was the lack of visits" and "going weeks without seeing [her] son." But the juvenile court did not have to find credible Vivian's claim she posed no threat to Royal. (See *In re Mickel O.*, *supra*, 197 Cal.App.4th at p. 615 [in ruling on a section 388 petition, "'[i]t is the [juvenile] court's role to assess the credibility of the various witnesses'" and "'to weigh the evidence to resolve the conflicts in the evidence'"].) The court found Vivian was "still unable to control [her] impulses" and was "threatening people," and the evidence did not compel a finding to the contrary.

Vivian also argues "challenging relationships between parents and professionals do not justify denying reunification services." She cites *In re Ma.V.* (2021) 64 Cal.App.5th 11, where

the court stated: "The ability of a parent to get along with a social worker is not evidence from which a removal order can be supported. [Citation.] While a social worker or juvenile court may feel more comfortable and confident about a parent who is friendly and gets along with them, that is not what the law requires." (*Id.* at p. 25.) But Vivian's concerning behavior went far beyond not being "friendly" or not "getting along" with the social worker. Despite completing an anger management class in October 2023, she sent the social worker a text in March 2024 threatening to "slap the fuck out of" her. In light of Vivian's history of physically abusing Journee, the Department was justifiably concerned that Vivian was not "able to regulate her anger and her emotions" and that she might not "be able to control her temper with" Royal. The juvenile court reasonably concluded Vivian was "still unable to control [her] impulses."

Finally, Vivian argues that, though she "had personal clashes with service providers," she "safely cared for Royal." According to Vivian's father, Vivian "could speak harshly and struggled with authority," but "would never hurt Royal." Vivian asserts: "Social workers and caregivers alike observed that Royal was emotionally bonded to [Vivian], affectionate with her, and responded positively to her age-appropriate redirection and care." But evidence that Vivian appropriately cared for Royal and that he was bonded to her did not demonstrate a changed circumstance. Even before the court terminated Vivian's reunification services, she had been behaving appropriately with Royal and had never abused or neglected him. And, as discussed, that evidence did not compel a finding Vivian had resolved the primary unresolved issue: her explosive temper, combined with her history of physically abusing Journee (which Vivian did not

15

acknowledge).  Though Vivian had not yet physically or emotionally harmed Royal, the court could reasonably infer that, based on Vivian's past behavior, Royal was at risk of harm.  (See *In re Mickel O.*, *supra*, 197 Cal.App.4th at p. 616 ["In considering whether the petitioner has made the requisite showing [under section 388], the juvenile court may consider the entire factual and procedural history of the case."].)  Because the evidence did not compel a finding Vivian established a "substantial change of circumstances" (*In re J.M.*, *supra*, 50 Cal.App.5th at p. 846), the juvenile court did not err in denying her section 388 petition to reinstate reunification services.

## DISPOSITION

The appeal is dismissed.



SEGAL, J.

We concur:



MARTINEZ, P. J.



FEUER, J.

16