Filed 3/12/26  In re E.K CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re E.K. et al., Persons Coming Under the Juvenile Court Law. | |
| YOLO COUNTY HEALTH AND HUMAN SERVIVCES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.K.,<br><br>Defendant and Appellant. | C103480<br><br>(Super. Ct. Nos. JV2024-02141 & JV2024-02142) |

Appellant C.K., father of the minors, appeals from the juvenile court's jurisdictional and dispositional orders.  (Welf. & Inst. Code, §§ 300, 361, 395.)  He challenges the sufficiency of the evidence as to select jurisdictional findings and contends the juvenile court erred in denying him visitation with the minors.  We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2024, Yolo County Health and Human Services Agency (the Agency) received a referral regarding the minors after father took the 11-year-old minor, G.K., to a therapy intake appointment that day during which G.K. disclosed "sexual touching" by father. When G.K. and father were asked during intake whether there was a trauma history, father said he did not think so. The minor began to cry and asked to speak to the mandated reporter in private. When father left the room, the minor wrote a letter disclosing some "sexual touching" by father when the minor was younger. The minor reported that father believed the minor to be sleeping but the minor was awake. G.K. reported being uncomfortable around father and that it had been going on for a long time, although the minor did not notice the "sexual behavior" when the minor was younger. G.K. did not recall the last time it happened.

When the social worker met with mother regarding the allegations, mother's first question was, "It's not sexual is it?" Mother stated she feared something like this was going to happen, as she was sexually abused as a child, and disclosed that a year or two before, G.K.'s older sibling, E.K., reported father putting his hand down her nightgown all the way to her private parts and that this was how father used to initiate sexual contact with mother. Mother reported she believed the disclosure and that G.K. would "never lie."

An MDI (multidisciplinary interview) took place with both minors. G.K. described the home as dirty and messy, and stated that father "groped" the minor's breast more than once while G.K. was on the bed and father thought the minor was asleep. When asked if other touching took place, G.K. did not want to talk about it. G.K. said the first time father touched the minor's breast was when the minor was eight and the last time was within the last year. G.K. said the incidents were traumatic but the minor had been too afraid to say anything. The minor also reported not being fed, being neglected by mother, and not trusting mother.

E.K. disclosed that father grabbed her breast when waking her up for school. One time, she was sleeping on father's bed when he grabbed her breast and when she looked at him, he was "allegedly sleeping." When she mentioned it later that morning, he said "he must have thought I was my mom or something" and then laughed and said, "Don't go telling people that I did that or I will get in trouble." She described two other specific occasions when father groped her breast – one when they were sleeping back-to-back and another when she did not respond to his attempts to wake her by shaking her and playing loud music.

E.K. described a specific subsequent incident when she was 12 years old. This time, she was lying on the bed pretending to be asleep. Mother, father, and G.K. were all home at the time. Father came in and tried to wake her. She pretended not to wake and then father got on top of her, lifted her shirt, and began sucking and chewing on her nipple. Father then placed his hands down her shorts, pulled the shorts down, and inserted his finger into her vagina. E.K. did not know what to do. She then heard father unzip his pants and felt him trying to insert his penis in her vagina. At this point, she said, out of either panic or distress, " 'You are squishing me.' " Father pulled up her pants and zipped his pants. She got up and took a shower and tried to process what had happened. She did not tell anyone for a while because she was scared, father had power over the family, and she did not have another place to stay. She did tell mother after the first time father had groped her breast and mother responded, "let me know if it happens again."

Mother confirmed that E.K. had reported that father would pinch her "boob" and "bottom" by her buttocks to wake her up in the morning. Mother stated the minors did not like to get up in the morning and the parents had difficulty waking them. When E.K. was five years old, she told mother that father had "gone down her shirt down through the front of her pants" and the mother reported "that just didn't make sense and there was no possible way that could've happened." Two years before the instant petition was filed,

E.K. reported that father grabbed her breast. Mother confronted father who did not deny it outright, and she told him not to touch the minors. She had been yelling at him and she did not remember his response exactly but it was "probably" something about her overreacting because of mother's history of sexual abuse as a young child. Mother confirmed that she did tell E.K. to let her know if it happened again.

When father was informed of the allegations he groped and touched the minors' breasts, he denied it happened but said, if it did happen, it more than likely happened by accident while attempting to wake the minors. He denied any inappropriate behavior. When asked if he had ever touched either of the minors' breasts for sexual gratification, he stated, "Not that I know of." When asked if he had ever placed his mouth on the breast and/or nipple of E.K. and sucked or "chewed" on it, he stated, "Um, no." When asked if he had ever digitally penetrated E.K.'s vagina, he stated, "No." When asked if he had ever placed his penis against E.K.'s vagina, he stated, "Uh, no." Father was not emphatic in his responses and continued to express confusion about the investigation despite being told numerous times that the concerns related to the sexual allegations and condition of the home. Father reported that both minors had been in therapy "of some sort" since they were very young. Both minors suffered from anxiety, and both were on medication. E.K. also reported that she had autism.

The Agency filed a section 300 petition, under subdivisions (b) and (d), on behalf of minors E.K. (then age 14) and G.K. (then age 11), alleging the minors suffered, or were at risk of suffering, serious harm as a result of father's sexual abuse of both minors and mother's failure to protect the minors from such abuse. The petition also alleged the family home was filthy and failed to meet basic health and safety standards. The minors were ordered detained. The November 27, 2024, detention order provided that mother was to receive three hours and father was to receive one hour of supervised visitation per week.

4

On December 11, 2024, G.K. reviewed the detention report and agreed with what was written and did not have any additional statements. A letter written by G.K. to G.K.'s counselor was attached to the jurisdiction report and read: "I don't feel comfortable with my dad because of how he acts. He makes (and has been making) overtly or slightly sexual comments, has touched me before in ways that make me uncomfortable being alone with him or in a vulnerable state. He makes me believe it's my fault and I don't know what to do. He says he's trying to be better about it and he has, but that whole experience is too much and makes me extremely uncomfortable with touch. It's been going on for a long time. I didn't notice the sexual behavior when I was younger. I don't remember the last time it happened. It's happened before, he was under the impression I was asleep, it's why I'm not comfortable being alone around him. I was too scared to do anything at that time."

E.K. said she wanted to clarify and expand on her disclosure of incidents of sexual abuse by father but preferred to do it in writing. She indicated she had documented a "major incident" and was still working on documenting "two smaller incidents that happened." She had texted mother recently about the "major incident," describing where father digitally penetrated her and attempted to insert his penis into her vagina. She explained that she was almost frozen in fear but when she realized what was happening, she "thankfully" took action.

The jurisdiction report, filed December 16, 2024, reported the minors were visiting with mother but declining visits with father, indicating they were unwilling to participate at that time. Father was upset the children were declining visits with him. He had not seen them since they were detained. He denied having inappropriately touched the minors, denied pinching the minors' breasts or buttocks to wake them, denied E.K. still slept in his room, and denied there was insufficient food in the home. In response to discussions about the report that he had put his hand down E.K.'s nightgown, father stated, "What does it matter?" and it was "a very long time ago."

5

Although mother initially believed the allegations of both minors, she now said she was "on the fence" as to whether she believed E.K.'s allegations and did not believe G.K. was telling the truth. She had discovered a box top where G.K. had written "October 15, 2024, the day my life changed" and concluded G.K. had planned the disclosure because G.K. was upset at mother. G.K. wanted her to move out and get a job. Mother then told the social worker, "The last two years, there's no way anything happened. He's been gone the whole time, every night and every weekend, the entire weekend." The social worker asked mother, "Who wakes them up for school?" and mother said, "He does, usually," explaining it was her coparenting arrangement that father took the minors to school and she picked them up and put them to bed.

In a January 2025 text conversation between G.K. and mother, G.K. confronted mother on the topic of nutrition and parenting. Mother responded by suggesting the minor's caregiver adopt the child and told G.K. she did not believe the minor had been sexually abused by father, indicating she believed the minor made the accusations so the minor did not have to live in the home. The minor maintained the accusations were true and that father had "raped" the minor on multiple occasions since the minor was six years old.

Thereafter, a follow-up MDI occurred. During the interview, G.K. disclosed details of sexual abuse that were not included during the first interview, explaining the minor was "more comfortable now, more confident," and "in better mental health not having to see my dad every day after what he did." The minor disclosed multiple and detailed accounts of father using lubrication to insert his finger and penis in the minor's anus. The incidents had occurred in the home, in the camping trailer, and in a hotel during a family vacation. The minor described feeling guilt about it happening and not reporting it sooner in order to protect E.K. G.K. said the sexual abuse happened a lot – 10 or 20 times.

6

The Agency filed a section 387 amended petition on February 5, 2025. In addition to the earlier allegations relating to E.K. and the allegation that father had groped G.K.'s breast, the petition added the allegations in (b-1) and (d-1) that father had inserted his finger and penis into G.K.'s anus.

Mother waived her right to a contested jurisdiction hearing and submitted on the Agency's reports. Father called the social worker as a witness and submitted exhibits, including his health summary packet and several character reference letters. The social worker testified that delayed reporting by a minor who is the victim of sexual abuse is "very common." The social worker found the minors' disclosures to be consistent during her investigation and did not see a motivation for either minor to fabricate the allegations of abuse in this case.

The juvenile court found the allegations in the amended petition true, adjudicated the minors dependent children of the court, and ordered them removed from parental custody. In making its findings and orders, the court addressed the credibility of the minors. It observed they gave the same account with increased specificity each time and there was no basis to believe the minors fabricated a story just to escape the conditions of the home. The court noted mother's statements provided some corroboration to the minors' statements. For example, mother had stated father's actions with E.K. were similar to how he initiated sexual contact with her. And mother had also asked, unprompted, if the allegations being made by G.K. were sexual in nature. The court found the minors provided credible reasons for not reporting the abuse earlier, such as father's power over the family, and the fact that they had nowhere else to live. Finally, the court found father's statements describing his touching of the minors as "accidents" and that he minimized many of the allegations rather than denying them outright to be "a bit of an odd response."

The juvenile court ordered reunification services and visitation for mother but bypassed father for reunification services under section 361.5, subdivision (b)(6), based

on its finding of severe sexual abuse. It found visitation between father and the minors would be detrimental to the minors and ordered no visitation be provided.

DISCUSSION

I

Jurisdiction

Father first requests this court review the sufficiency of the evidence to support the allegations in subparts (b-1) and (d-1) of the petition as to minor G.K. He acknowledges that, even if the findings as to those subparts were stricken, jurisdiction over G.K. remains. Additionally, the allegations of sexual abuse as to E.K. would also remain. Even so, he requests we exercise our discretion to reach the merits of his challenge to these two findings, noting we have such discretion when the finding: (1) serves as the basis for the disposition orders which are challenged on appeal, (2) could be prejudicial to appellant or impact future dependency proceedings, or (3) could have consequences for appellant beyond jurisdiction. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1489; *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763; *In re D.P.* (2023) 14 Cal.5th 266, 283.) Father does not, however, provide any analysis or discussion as to how these bases might apply here.[1]

Nonetheless, because the challenged jurisdictional findings relate to father's restriction on visitation, we will exercise our discretion to address his contention that the jurisdictional findings of (b-1) and (d-1) in the section 387 supplemental petition,

---

[1] For the first time in his reply brief, father argues we should exercise our discretion because of the "egregious nature" of the challenged jurisdictional findings. (We do not generally consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them earlier, as it deprives the respondent of an opportunity to counter the argument. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52; *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.)

alleging father had inserted his finger and his penis into minor G.K.'s anus, is not supported by substantial evidence. We reject the contention because it lacks merit.

Under section 355, subdivision (b), the social worker's report, and hearsay evidence contained therein, is admissible and constitutes competent evidence upon which a finding of jurisdiction may be made. With certain exceptions,[2] if a party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, that evidence is not sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is made. (§ 355, subd. (b).) However, no such objection was made in this case. Thus, minor G.K.'s hearsay statements contained in the social worker's report were admissible and competent evidence of the challenged jurisdictional findings.

Father argues minor G.K.'s statements were unreliable and/or "not credible" because: (1) the statements were made at a second MDI 107 days after the minor's removal and differed from the minor's initial disclosure of father's sexual abuse; (2) there was no evidence of physical injury presented to support the minor's statements; (3) the minor never complained of pain in the rectal area; and (4) the minor's description of father's behavior escalated from inappropriate to what father characterizes as "a reckless rapist." Father argues the sexually abusive behavior minor G.K. described is inconsistent with his character, as father's psychiatrist said he was responsible, honest, cooperative and forthright and there is nothing else in the record to indicate he has a "reckless streak." He further argues his large size (354 pounds in 2021) combined with the minor's large size rendered nonconsensual, penetrating anal sexual activity, as alleged by the minor to

---

[2] One such exception is when the hearsay declarant is a minor under 12 years old who is the subject of the jurisdictional hearing, unless the objecting party establishes that the statement is unreliable because it was the product of fraud, deceit, or undue influence. (§ 355, subd. (c)(1)(B).) G.K. was 11 years old when the challenged hearsay statements were made and 12 years old at the time of the contested hearing.

have occurred during a 2023 family vacation, unlikely to go unnoticed. Finally, father argues the juvenile court's remarks that the minors appeared to be withdrawn is unsupported by the evidence because it is "questionable" how much the juvenile court "could glean regarding their temperament" from their online (as opposed to in-person) presence. "In conclusion, [father argues, the] language in the b-1 and d-1 section 387 petition that father had inserted his penis and fingers into G.K. should be stricken as unreliable and unsupported by the evidence. The court did not properly evaluate reliability of the eleven-year old's late reports of severe sexual abuse."

We reject father's assignment of error. His contentions amount to a request that we reweigh the evidence and reassess the minor's credibility. In reviewing the juvenile court's findings, we " 'do not reweigh evidence or reassess the credibility of witnesses.' " (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) To the contrary, we consider the evidence in the light most favorable to the judgment, accepting every reasonable inference and resolve all conflicts in its favor. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) We conclude there is ample evidence to support the juvenile court's findings.

## II

### Visitation

Father also contends the juvenile court's finding that visitation would be detrimental to the minor was not supported by substantial evidence. This claim lacks merit.

When, as here, the juvenile court has denied reunification services to a parent, the court "may continue to permit the parent to visit the child unless it finds that visitation would be detrimental to the child." (§ 361.5, subd. (f).) The power to regulate visitation between parents and dependent minors rests with the juvenile court. (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1557-1558.) "Accordingly, if visitation is not consistent with the well-being of the child, the juvenile court has the discretion to deny such contact." (*In re*

*T.M.* (2016) 4 Cal.App.5th 1214, 1217; see also *In re Matthew C.* (2017) 9 Cal.App.5th 1090.) The court has great discretion in deciding visitation and we will not disturb the juvenile court's decision absent an abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) We review the finding of detriment for substantial evidence. (*In re A.J.* (2015) 239 Cal.App.4th 154, 156, 160.)

Father argues the juvenile court's finding of detriment is not supported by evidence because the minors were not afraid of him, and he would not present a threat to their physical safety during a monitored visit. He repeatedly emphasizes that the minors had accepted his Christmas cards and gifts, suggesting that having done so dispels the juvenile court's finding that visitation would be detrimental. We disagree and find substantial evidence supports the juvenile court's finding.

The sexual abuse perpetrated by father, combined with the minors' steadfast refusal to participate in visits with father, supports the juvenile court's conclusion that visitation would be detrimental. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 51 [child's aversion to visiting an abusive parent is a proper factor for consideration in administering visitation so long as it is not "the sole factor"].) Both minors reported suffering substantial emotional distress because of father's abuse and have steadfastly refused visitation with him since their initial detention. Both minors struggled with disclosing the abuse. G.K. was able to talk about some of the most serious abuse only after having separation from father. Both minors suffer from anxiety, depression, and insomnia, and both are receiving psychiatric care and medication. The juvenile court reasonably concluded that forcing these minors to visit with father under these circumstances would be detrimental to their well-being.

Father argues the court should have ordered weekly visitation, leaving the decision whether to visit to the discretion of the minors. Such an order would have been improper. "If the juvenile court orders visitation, 'it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur.' [Citation.] When the

court abdicates its discretion and permits a third party, including the dependent child, to determine whether any visitation will occur, the court impermissibly delegates its authority over visitation and abuses its discretion." (*In re Ethan J.* (2015) 236 Cal.App.4th 654, 661.) In any event, finding visitation with father would be detrimental, the juvenile court appropriately exercised its discretion to deny visitation instead of placing the burden on the minors to refuse visits with father.

## DISPOSITION

The orders and judgment of the juvenile court are affirmed.


/s/
WISEMAN, J.*


We concur:



/s/
DUARTE, Acting P. J.



/s/
MESIWALA, J.

\*  Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.