Filed 6/25/26  In re R.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.S., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>N. P.,<br><br>        Defendant and Appellant. | F091161<br><br>(Super. Ct. Nos. 22JP-00098-A, 22JP-00098-B, 22JP-00098-C)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Forrest W. Hansen, County Counsel, and Ann Hanson, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Detjen, Acting P. J., Snauffer, J. and DeSantos, J.

Appellant N.P. (mother) is the mother of R.S., G.S., and A.S. (collectively, the children), who are the subjects of this dependency case. Mother challenges the juvenile court's order issued at a Welfare and Institutions Code section 366.26[1] hearing that resulted in the establishment of a legal guardianship for the children. Mother asserts the juvenile court erred by making an insufficient visitation order. She also contends the juvenile court failed to make final Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et. seq.) findings.[2]

The Merced County Human Services Agency (agency) concedes error and the parties have stipulated to an immediate limited remand for the purpose of establishing a new visitation order and complying with the provisions of ICWA and the California Indian Child Welfare Act (§ 224 et seq.) (Cal-ICWA). For the reasons discussed herein, we accept the agency's concession of error. Accordingly, we accept the stipulation, conditionally reverse the juvenile court's order establishing a permanent plan of legal guardianship, and remand with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2022, the agency filed a petition alleging the children were described by section 300, subdivisions (a), (b)(1), and (g). The allegations involved physical abuse of the children by mother and domestic violence between mother and the children's stepmother. At the initial detention hearing held on August 19, 2022, mother claimed Indian ancestry through her paternal grandparents. The juvenile court directed the agency to conduct an investigation into whether ICWA was applicable to the children.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." *(In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

The children were detained from mother's custody at a continued detention hearing. A combined jurisdiction and disposition hearing was set for September 29, 2022. On September 9, 2022, mother filed a "Parental Notification of Indian Status" form (ICWA-020), which disclosed Indian ancestry with the Yaqui tribe. The agency sent a "Notice of Child Custody Proceeding for Indian Child" form (ICWA-030) to the Pascua Yaqui Tribe of Arizona on September 26, 2022. A response from the tribe indicated that the children were neither members nor eligible for membership in their tribe.

On October 20, 2022, the juvenile court found the allegations in the petition true and ordered family reunification services for mother and the children's father, C.S. (father). Supervised visitation was ordered between mother and the children at no less than once per month, and a six-month review hearing was set for April 6, 2023. At the six-month review hearing, the juvenile court continued family reunification services and set the 12-month review hearing for August 3, 2023.

The agency's report for the 12-month review hearing recommended termination of mother and father's family reunification services. A contested 12-month review hearing was held on September 26, 2023. The juvenile court followed the agency's recommendation to terminate reunification services, and it found ICWA was not applicable. A section 366.26 hearing was set for January 18, 2024.

The report for the section 366.26 hearing recommended that the children's permanent plan be long-term foster care. The children were placed together in the same resource family home since April 2023. The current care provider was unable to adopt the children, but they were willing to have the children until a more permanent home was found. On May 2, 2024, the juvenile court ordered the children to continue in foster care with a permanent plan of placement with a fit and willing relative. Mother's supervised visitation with the children was to occur no less than once per month. A postpermanency review hearing was scheduled for April 21, 2025.

The agency's status review report, filed March 28, 2025, recommended the children's permanent plan continue. Mother attended supervised community visits with the children each month. On April 21, 2025, the juvenile court ordered the children's current permanent plan to remain, and it adopted the agency's proposed orders.

On June 5, 2025, the agency filed a section 388 petition requesting that a section 366.26 hearing be set to evaluate a plan of legal guardianship. The children's current care provider was now willing to serve as the children's legal guardian. The juvenile court granted the agency's section 388 petition on August 12, 2025. A section 366.26 hearing was set for November 20, 2025.

The report for the subsequent section 366.26 hearing, dated November 14, 2025, recommended that a legal guardianship be established for the children without dependency. Mother engaged in monthly supervised visits with the children, and she showed genuine interest in the children's lives and well-being. The children's care provider intended to move to North Carolina, and she wanted to take the children with her as their legal guardian. Each of the children expressed a desire to continue visiting with mother. The agency recommended that visitation be provided as follows: "[I]t will be up to the prospective legal guardians to facilitate visitation, as long as it meets the needs and is in the best interest of the minor, at a time and location mutually agreed upon by the legal guardians, the mother, and the presumed father."

On November 21, 2025, the agency sent an additional ICWA-030 notice form to the Pascua Yaqui Tribe of Arizona, Cherokee Nation, Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians. The record does not include any responses to this notice from the tribes.

At the continued section 366.26 hearing held on January 13, 2026, mother was present and represented by counsel. Counsel for the agency and children submitted on the agency's report and recommendation. Mother's counsel indicated mother was not in

4.

agreement with the plan of legal guardianship, but she had no additional evidence or argument to present.

The juvenile court adopted the agency's recommendation and ordered the children's care provider be appointed legal guardian without further dependency jurisdiction. The juvenile court indicated the legal guardian would facilitate visitation between the children and the parents. The juvenile court's written orders stated visitation would be scheduled as follows: "The prospective legal guardians to facilitate visitation, as long as it meets the needs and is in the best interest of the minor, at a time and location mutually agreed upon by the legal guardians, the mother, and the presumed father." Mother filed a timely notice of appeal.

## DISCUSSION

### I. Visitation Orders

Mother contends the juvenile court's visitation orders improperly delegated to the legal guardian the decision whether she would have visits.

#### A. *Applicable Law*

Where a juvenile court orders visitation, it shall specify the frequency and duration of visits. The time, place, and manner of visitation may be left to the legal guardians, but they cannot have discretion to decide whether visitation actually happens. (*In re Grace C.* (2010) 190 Cal.App.4th 1470, 1478.) The juvenile court cannot delegate the decision concerning whether visitation will occur to any third party, including the child, the social services agency, or the guardian. (*In re Korbin Z.* (2016) 3 Cal.App.5th 511, 516–517 [discretion delegated to child]; *In re Ethan J.* (2015) 236 Cal.App.4th 654, 661–662 (*Ethan J.*) [same]; *In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1136 [improper delegation to social services agency]; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1123 [improper delegation to custodial parent]; *In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314 [improper delegation to legal guardian]; *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476–1477 [discretion delegated to therapist].)

**B.** *Standard of Review*

" 'We review applicable legal principles de novo, but apply a deferential standard of review to the court's exercise of discretion and resolution of disputed facts.' " (*In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314.)

**C.** *Analysis*

"When, as here, the juvenile court orders a legal guardianship at the permanency planning hearing, it must 'make an order for visitation with the parents … unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child.' (§ 366.26, subd. (c)(4)(C).)" (*Ethan J.*, *supra*, 236 Cal.App.4th at p. 661.)

The ultimate supervision and control over its discretion must remain with the court. (*In re T.H.*, *supra*, 190 Cal.App.4th at p. 1123.) "If the juvenile court orders visitation, 'it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur.' " (*Ethan J.*, *supra*, 236 Cal.App.4th at p. 661.) "When the court abdicates its discretion and permits a third party, including the dependent child, to determine whether any visitation will occur, the court impermissibly delegates its authority over visitation and abuses its discretion." (*Ibid*.)

Neither the guardians nor the children may be given absolute discretion to determine whether visitation will occur at all. (*In re M.R.* (2005) 132 Cal.App.4th 269, 274; *In re S.H.* (2003) 111 Cal.App.4th 310, 317–320.) In the present case, the juvenile court identified the children's permanent plan as legal guardianship, ordered that the legal guardian facilitate visits "as long as it meets the needs and is in the best interest of [the children]." In doing so, the court impermissibly delegated its authority to the guardian to determine whether visits occurred at all. (*In re M.R.*, at p. 274.) Given the improper delegation of authority to the legal guardian, "we must remand for further proceedings at which the juvenile court shall clarify the terms and conditions applicable to [mother's] visitation .…" (*In re Kyle E.*, *supra*, 185 Cal.App.4th 1130, 1136.)

Accordingly, we accept the parties' stipulation that the current visitation order for mother be set aside to allow the juvenile court to make an order specifying the frequency and duration of visitation. Absent evidence that visitation would be detrimental to the children, the juvenile court must order that some form of visitation occur between mother. Although we affirm the order granting the legal guardianship, we reverse the visitation order and remand for the juvenile court to provide a minimum frequency and duration for the parents' visits.

## II.    ICWA Finding

Next, mother contends the juvenile court failed to make final ICWA findings after the agency's most recent notice to include the Cherokee tribes. Therefore, she argues that the agency failed to fulfill its duty of inquiry under ICWA and the juvenile court erred in finding ICWA did not apply. The agency concedes this point and we concur.

### A.    *Applicable Law*

Under ICWA's state analogue, Cal-ICWA (§ 224 et seq.), the court and county child welfare department "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9; Cal. Rules of Court, rule 5.481(a).)[3] The agency's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.…" (§ 224.2, subd. (b)(2).)

When initial inquiry gives rise to a "reason to believe" (but not sufficient evidence to determine there is a "reason to know") that an Indian child is involved in a proceeding, "further inquiry regarding the possible Indian status of the child" is required, which includes gathering additional biographical information from family members and

---

[3]    All further references to rules are to the California Rules of Court.

7.

contacting relevant tribes.  (§ 224.2, subd. (e)(2)(A)–(C).)  "Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or citizenship eligibility determination, as well as information on the current status of the child and the case."  (*Id.*, subd. (e)(2)(C).)

The agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes."  (Rule 5.481(a)(5).)  Before finding ICWA inapplicable, the juvenile court must make a finding that the department conducted "proper and adequate further inquiry" and exercised "due diligence" in doing so, and that "there is no reason to know whether the child is an Indian child."  (§ 224.2, subd. (i)(2).)

## B.    *Standard of Review*

We review the juvenile court's finding that there is no reason to know whether a child is an Indian child under a substantial evidence standard, and the court's finding that the department has conducted a proper and adequate inquiry and due diligence for abuse of discretion.  (*In re K.H.* (2022) 84 Cal.App.5th 566, 600–601; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.)

Regarding the juvenile court's discretion in evaluating the department's inquiry efforts, this court explained in *K.H.*, "so long as the [department] conducts a reasonable inquiry and documents its results, the juvenile court will have the room to exercise its discretion in determining whether the [department's] efforts are sufficient to satisfy the mandates of ICWA and related California law."  (*In re K.H.*, *supra*, 84 Cal.App.5th at p. 604.)  "The [department's] inquiry must extend far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered."  (*Ibid.*)

C.    *Analysis*

Mother contends the juvenile court did not make oral or written ICWA findings after the agency sent an additional ICWA notice form to tribes in November 2025.  The juvenile court is required to make findings as to the applicability of the ICWA, in part because it must "make certain findings affecting an Indian child before ordering foster care or terminating parental rights."  (*In re M.B.* (2010) 182 Cal.App.4th 1496, 1502; see also *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704–705, 709.)  Where "the dependency case is still ongoing, any perceived deficiencies with ICWA inquiry and noticing may still be resolved during the normal course of the ongoing dependency proceedings."  (*J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 461.)  However, compliance with ICWA is required before terminating dependency jurisdiction or parental rights.  (*In re K.M.* (2015) 242 Cal.App.4th 450, 458.)

In the present case, mother claimed Indian ancestry at the time of the children's removal.  The agency sent notice to the Pascua Yaqui Tribe of Arizona in October 2022, and the tribe indicated the children were not members or eligible for membership in their tribe.  However, the agency sent an additional notice, which included the three federally recognized Cherokee tribes in advance of the children's second section 366.26 hearing in January 2026.  The record contains no responses from the Cherokee tribes or additional findings related to the juvenile court's ongoing inquiry into the children's possible Indian ancestry after the subsequent notice in November 2025.  Accordingly, there is no record that the juvenile court made a determination on the adequacy of the department's efforts to inquire into the children's possible Cherokee ancestry.

While findings may be express or implied, we will recognize an implied ICWA finding only when we "can be confident that the juvenile court considered the issue and there is no question but that an explicit ruling would conform to the implicit one." (*In re E.W.* (2009) 170 Cal.App.4th 396, 405.)  The California Supreme Court has implied an ICWA finding where, "without such a finding, [the court's] obligation would

9.

have been to order further inquiry to ensure that the appropriate tribe had notice and was given the opportunity to intervene before the court terminated parental rights and approved the adoption plan." *(In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101; see also *In re Dezi C.* (2024) 16 Cal.5th 1112, 1137, 1141 [reviewing implied finding].)

In sum, we cannot conclude that the juvenile court considered and decided that the agency fulfilled its inquiry obligations and the ICWA does not apply. Accordingly, we accept the parties' stipulation and remand the matter for the juvenile court to enter an ICWA finding based on the agency's documented inquiry.

Before reversing or vacating a judgment based upon a stipulation of the parties, an appellate court must find "both of the following: [¶] (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal. [¶] (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code Civ. Proc., § 128, subd. (a)(8).) Because this case would be subject to reversal to permit compliance with ICWA and corresponding California statutes and rules absent the parties' stipulation, a stipulated remand advances the interests identified by Code of Civil Procedure section 128, subdivision (a)(8). (See *In re Rashad H.* (2000) 78 Cal.App.4th 376, 379–382.)

## DISPOSITION

The juvenile court's orders appointing a legal guardian for the children are conditionally reversed. The matter is remanded to the court for the limited purpose of entering a new visitation order and ensuring compliance with the inquiry and documentation provisions set forth in section 224.2 and rule 5.481. If, after determining that a proper, adequate, and duly diligent inquiry was made, the court concludes that ICWA does not apply, then the court shall reinstate its guardianship appointment orders. If, instead, the court concludes that ICWA applies, then the court shall proceed in

conformity with ICWA and Cal-ICWA.  In all other respects, the court's order appointing a legal guardian for the children is affirmed.  By stipulation of the parties, the Clerk/Executive Officer of this court is directed to issue the remittitur immediately. (Rule 8.272(c)(1).)